## EDELHOFF v. STATE.

CRIMES—EMBEZZLEMENT BY AGENT—SEVERAL DISTINCT ACTS—
INDICTMENT—PROOF OF INCORPORATION—INSTRUCTIONS—EVI-
DENCE—APPEAL AND ERROR.

1.　The statute (Sec. 53, Chap. 73, L. 1890.) not requiring a de-
mand and refusal to pay over as an element of the crime of
embezzlement by an agent, it is not necessary that such an
allegation should appear in the accusation.

2.　A certified copy of a certificate of incorporation, filed with
the Secretary of State, is not the only evidence which may
be admitted of corporate existence; but it was sufficiently
established by the introduction of the original certificate
filed with the County Clerk, and proof that the company
was doing business as such, and the defendant was in its
employ.

3.　Where the evidence is clear, positive, and undisputed as to
the guilt of the accused, the verdict and judgment will not
be disturbed for an erroneous instruction upon the sub-
ject of reasonable doubt.

4.　Where the evidence discloses that the embezzlement con-
sisted of collecting rents, monthly, from a tenant of the em-
ployer, and retaining the same, reporting, monthly, the
premises as vacant and unoccupied, there is a separate and
distinct act of embezzlement at each monthly period; and
the indictment charging but one offence, and the verdict
fixing the amount embezzled as the whole sum of all the
conversions, the verdict is erroneous, as a conviction of sev-
eral offences when but one is charged.

5.　Evidence of the several conversions was admissible upon
the one charge, for the purpose of showing acts of similar.
nature, to establish guilty knowledge, to exclude the possi-
bility of accident or mistake in the accounting, and to show
the felonious intent.

6.　An allegation in an indictment for embezzlement, that
the thing embezzled is "money" would be sufficient, without
more specific description.

[Indictment returned October 17, 1893—Decided May 7, 1894.]

ERROR to District Court for Carbon County, HON. JESSE KNIGHT, Judge.

This was a proceeding brought to obtain a review of the trial and proceedings resulting in the conviction of Emil Edelhoff of the crime of embezzlement. The facts are sufficiently stated in the opinion.

*H. Donzelmann,* for plaintiff in error.

The indictment is not certain. (L. 1890, p. 134, Sec. 53.) Articles of incorporation filed with the county clerk are not legal evidence of corporate existence. (R. S., p. 194.) An unnecessary description in a pleading must be proved as alleged. (1 Bish., Cr. Pro., Secs. 485, 488; Warrington v. State, 1 Tex., App. 173; John v. State, 24 Miss., 569.) Separate acts of embezzlement cannot be given in evidence upon a charge of but one. (Exparte Record, 11 Nev., 287.) Secondary evidence inadmissible until proof that other is out of power of the party offering it. (1 Greenleaf, 84; Hart v. Yunt, 1 Watts, 253.) To constitute embezzlement there must appear: 1. The agency. 2. Receipt of the money. 3. That it was received in course of employment. 4. That it was misapplied or converted. (Washington v. State, 72 Ala., 272; Exparte Hedley, 31 Cal., 108; Webb v. State, 8 Tex., App. 310; Brady v. State, 21 id., 659.) The instruction as to reasonable doubt was erroneous. (Palmerston v. Terr'y, 3 Wyo., 333.)

*Charles N. Potter,* Attorney General, for the State.

No previous demand is necessary to constitute the crime under Sec. 53 of Crimes Act. The indictment alleges the crime in the language of the statute, and is sufficient. (Lang v. State, 97 Ala., 41; State v. Washington, 41 La. Ann., 778; State v. Fornier, 12 Mont., 235; Wallis v. State, 16 S. W., 821.) There was sufficient proof of incorporation. (Calkins v. State, 18 O. St., 367.) Evidence is admissible of other acts of embezzlement by same party from the same person during the same employment. (People v. Nevce, 86 Cal., 393.) The separate monthly receipts did not necessarily constitute sepa-

rate acts of embezzlement. For all that the testimony discloses, all of the money may have been embezzled at one time. The jury properly considered the evidence as showing one act of embezzlement. (Brown v. State, 18 O. St., 496; Gravatt v. State, 25 id., 162; Taylor v. State, 29 Tex., App. 466; State v. Pierce, 77 Ia., 245; Jackson v. State, 76 Ga., 551; Kerr v. People, 110 Ill., 629; State v. Noland, 111 Mo., 473.) An appellate court will not vacate a verdict in a criminal case where the guilt of the accused is clearly established, and another trial could not result differently. (State v. Czizek, 38 Minn., 192.)

GROESBECK, CHIEF JUSTICE.

Two assignments of error are made in the petition in error: (1) That the district court erred in overruling the demurrer to the indictment, and (2) that the court erred in overruling the motion of plaintiff in error for a new trial. Under the rules of this court, the second assignment of error renders available as assignments of error all the grounds set forth in the motion for a new trial.

There are forty distinct matters presented in this motion, one of which is that the verdict of guilty is not sustained by sufficient evidence and is contrary to law, and the other grounds relate to errors of law occurring during the trial, to the effect that the court overruled the demurrer to the indictment, the alleged errors in the admission of evidence, the refusal to give to the jury certain instructions requested by plaintiff in error, and the giving of certain instructions on behalf of the prosecution over the objection of the plaintiff in error.

We do not deem it necessary to pass upon all these alleged errors in detail, and we shall consider those only which in our opinion will dispose of the case.

1. The demurrer to the indictment was upon the ground that the facts therein alleged do not constitute a crime under the laws of this State. The charging part of the indictment is as follows:

"That Emil Edelhoff, late of the county aforesaid, on the

thirtieth day of June in the year of our Lord one thousand eight hundred and ninety-three, at the county and State aforesaid, the said Emil Edelhoff being then and there a clerk, servant and employe of the Union Pacific Coal Company, a corporation duly existing under the laws of the State of Wyoming, and then and there having access to, control and possession of two hundred eight and 40-100 dollars, in lawful money of the United States of America, then and there the property of the said Union Pacific Coal Company and to the possession of which the said Union Pacific Coal Company, was then and there entitled, did while in such employment unlawfully and feloniously take, purloin, secrete and appropriate to his own use the money aforesaid then and there belonging to the said Union Pacific Coal Company as aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming."

This indictment was drawn under section 53 of the Crimes Act (Ch. 73, Sess. Laws 1890) which reads:

"Every officer, agent, attorney, clerk, servant or employe of any person who, having access to, control or possession of any money, article or thing of value, to the possession of which his employer is entitled, shall, while in such employment, take, purloin, secrete or in any manner whatever appropriate to his own use, or to the use of others, any money, coin, bills, notes, credits, choses in action, or other property or article of value, belonging to or deposited with, or held by such person, in whose employment said officer, agent, attorney, clerk, servant or employe may be, shall be deemed guilty of embezzlement, and shall be imprisoned in the penitentiary for not more than fourteen years."

The indictment is challenged because it does not allege a demand for the money alleged to be embezzled, but this is not required except in sections 52 and 54 of the Crimes Act, and these sections, one preceding and one succeeding the section under which this indictment was drawn, severally relate to the embezzlement of public funds by an official who fraudulently fails or refuses to account for, pay and deliver to such person

as may be legally entitled to receive the same, all moneys, choses in action and property which may have come into his hands by virtue of his office, either at the expiration of or during his term of office, and to the refusal of an attorney at law or person engaged in making collections for others, who having money or anything of value in his possession or under his control received for his client or employer, fraudulently refuses to pay over and deliver the same to his employer or client, or the person by them designated to receive the same, less the charges thereon, on reasonable demand. These sections, with the one under consideration, are independent of each other, and were doubtless enacted in order to cover every possible phase of the fiduciary relations generally arising in prosecutions for embezzlement. As the statute under which it is conceded this indictment was brought does not require a demand and refusal to pay over as an element of the crime of embezzlement, it is not necessary that such an allegation should appear in the accusation. State v. Tompkins, 32 La. Ann., 623; Wallis v. State (Ark.), 16 S. W., 821; State v. New, 22 Minn., 76; Hollingsworth, 111 Ind., 289, 12 N. E., 490.

The description of the property alleged to have been embezzled as lawful money of the United States of America is warranted by Sec. 143 of the Crimes Act, and by Sec. 3254 Rev. Stat., without specifying any particular coin, note or bill.

It appears to us that the indictment is sufficient and states an offense as defined by the laws of the State.

2. It is contended that the allegation in the indictment that the Union Pacific Coal Company whose property is alleged to have been embezzled was "a corporation duly existing under the laws of the State of Wyoming," is not sustained by the evidence, and that, although the bare allegation that said company was a corporation would have been sufficient, without alleging that it was a domestic corporation, yet such an allegation was a matter of description, an averment that must be proved as laid. The statute (Sec. 502, Rev. St.) provides that a copy of the certificate of incorporation of a domestic corporation duly certified by the secretary of State,

under the great seal of the State shall be evidence of the existence of such incorporated company, and this is invoked as prescribing the exact proof required in showing the existence of such a corporation. The statute relating to the creation of corporations requires the execution of duplicate certificates of incorporation by the incorporators, one to be filed with the secretary of State and the other in the office of the clerk of the county wherein the business of the corporation is to be carried on. (Sec. 501, Rev. St.)

The evidence of the corporate existence of the Union Pacific Coal Company was shown by the production of the original certificate filed with the clerk of Carbon county, and by parol evidence to the effect that such corporation conducted and operated its business in that county and that defendant was employed by such corporation. Although the statute provides that the certified copy of the secretary of State is evidence of the existence of such corporation, it does not declare that this is the only evidence of such corporate existence that may be presented and so other evidence may be introduced to show that fact. The law was doubtless enacted to dispense with the necessity of introducing the original certificate of incorporation, which is a matter of record, not for the purpose of establishing a new rule of evidence to prove the corporate existence. Surely, one of the duplicate certificates of incorporation is certainly as effective proof as a certified copy of the other, particularly as it is shown that the corporation was doing business as such and that it employed the plaintiff in error. In the case of Calkins v. State, 18 Ohio Stat., 370, it is stated that on the trial, parol proof was offered and admitted to the effect that an association of persons existed, claiming to be a corporation under the name of the Michigan Southern and Northern Indiana Railroad Company, suing and being sued, having a common seal, operating a railroad as such, and exercising the franchise of a corporation. It was held that such proof was sufficient to show the corporate existence of such an association, and this in a criminal case. The court say:

"In so holding, we think we come fairly within the princi-

ples declared in Sasser v. The State, 13 Ohio, 453, and Reed
v. The State, 15 Ohio, 217; and where a person accepts em-
ployment from an association, claiming and assuming to have
a corporate existence, as its clerk, and then, by means of the
facilities which his employment and the confidence in him
affords, embezzles its property, it is difficult to perceive any
principle of justice, public or private, which would be sub-
served by requiring of the State stricter proof of the corporate
existence of the employer of the clerk, or of the owner of the
property embezzled, than was given in this case."

The original certificate of incorporation of the company,
filed in the office of the clerk of Carbon county, and other
evidence in the case shows clearly that the company was
doing business in that county and that the defendant knew
this and was employed by such a corporation, and this was suf-
ficient.

3. The court in an instruction to the jury requested by
the prosecution thus defined a reasonable doubt:

"The court instructs the jury that while before you can find
the defendant guilty, you must find that his guilt has been
established by the evidence beyond a reasonable doubt, still
the reasonable doubt which entitles the accused to an acquittal,
is a doubt of guilt reasonably arising from all the evidence in
the case. It does not mean a doubt arising from mere caprice
or groundless conjecture. The proof is to be deemed suffi-
cient when the evidence is sufficient to impress the judgment
of ordinarily prudent men with a conviction on which they
would voluntarily act in an important affair of their own."

The plaintiff in error excepted to the giving of this instruc-
tion to the jury over his objection, and the case of Palmerston
v. Territory, 3 Wyo., 333, 23 Pac., 73, is cited in support of
the objection. The instruction in that case and that given
in this case upon the question of reasonable doubt are nearly
the same. In the instruction before us, the word "volun-
tarily" is employed, and in the other it is omitted. The inser-
tion of the word, it is claimed by the prosecution, will meet
the objections of the territorial supreme court in the case of

Palmerston v. Territory, where the instruction given was held bad, although under some of the authorities it would be considered good. The cases are reviewed in the note to the case of Cornish v. Territory, 3 Wyo., at page 101, showing the conflicting views of the courts upon the proper definition of a reasonable doubt. To the cases mentioned in such note may be added those of Morgan v. State, 48 Ohio St., 376, and Spies et al. v. People, 122 Ill., pp. 82, 252. Mr. Bishop says in his work on Criminal Procedure, after reviewing the interpretation of the words "reasonable doubt," that "the books do not contain one affirmative definition which can safely be pronounced both helpful and accurate," and the learned author asserts that there are no words plainer than "reasonable doubt" and none so exact to the idea meant. (1 Bish. Crim. Pro., 1095.) We are relieved from the necessity of determining the correctness of the definition, as however erroneous the instruction may be, an examination of the record will show that the jury could not have been misled by it. The evidence was clear, positive, and undisputed as to the guilt of the defendant below of the offense of embezzlement and there was no room for doubt of his guilt. It is well settled that a judgment will not be reversed for an erroneous ruling or instruction where it clearly appears from the whole record, that it did not prejudice the rights of the defendant, although an exception to the erroneous ruling was properly and timely interposed. Berry v. State, 31 Ohio State, 225, and cases cited. For the reason that the instruction could not possibly have misled the jury under the evidence in the case which was that of the prosecution, the defendant below evidently relying upon alleged errors in the trial and submitting the case on the evidence of the State, we will not disturb the verdict and judgment for this cause, and we shall not attempt to decide whether or not the instruction complained of was erroneous.

4. Is the verdict sustained by the evidence? The record discloses that the plaintiff in error was employed as a clerk of the Union Pacific Coal Company at Hanna, Carbon county, Wyoming, and that it was part of his duties to collect rents for the occupation of certain dwellings by its employes, and to

make a report of such rents collected, for the superintendent of the company and to remit monthly the cash received from this source. For a period of time between and including January, 1892, and June, 1893, while in such employment, he collected personally from one August Martilla, an employe of the company, monthly, for six and one half months, the rent for house number 87 the sum of $8.75, and the sum of $8.25 monthly for eleven and one-half months for the rental of house number 50. At the end of each month, plaintiff in error made reports of the rents collected, as it was his duty to do, and remitted the proceeds, but failed to account for the rents paid to him by Martilla, reported that the house occupied by Martilla was vacant and did not remit the amount paid for the rent. These reports and letters of remittance were signed by Edelhoff for the superintendent at Hanna, while the receipts given to Martilla were signed by the plaintiff in error personally, with one exception, and that was in the name of the superintendent with the initial letter of the surname of the plaintiff in error, the way the rent reports and letters of remittance were signed. There was also evidence showing that no other remittances were made by plaintiff in error or by the office in which he was employed than those proven. The plaintiff in error offered no evidence whatever. His counsel objected to the introduction of any evidence except as to one transaction, that of the collection of the rent fo. the month of January, 1892, from Martilla and the reports of the amounts collected and the remittances, showing that the rent was not paid into the company nor the amount received therefor transmitted to the company, on the ground that as but one transaction and but one offense was charged in the indictment, the proof should be limited to one transaction, and the same objection was made at the close of the evidence on behalf of the prosecution, when the receipts for rent, the rent reports, the cash reports and letters of remittance were offered in evidence. These objections were overruled by the court and exceptions were taken. We think the evidence was admissible for the purpose of showing acts of similar nature to establish guilty knowledge, to exclude the possibility

of accident or mistake in the accounting, and to show the felonious intent. The cases are reviewed in People v. Gray, 66 Cal., 271, 5 P. 240, where the authorities are collected and examined on this proposition. See Archibald's Crim. Prac. and Pl. 7th ed., 314: "But this is a dangerous species of evidence, not only because it requires a defendant to meet and explain other acts than those charged against him, and for which he is on trial, but also because it may lead the jury to violate the great principle that a party is not convicted of one crime by proof that he is guilty of another. For this reason, it is essential to the rights of the accused that, when such evidence is admitted, it should be carefully limited and guarded by instructions to the jury, so that its operation and effect may be confined to the single legitimate purpose for which it is competent." Commonwealth v. Shepard, 1 Allen, 581; State v. Lapage, 57 N. H., 245. The plaintiff in error did not demand an election by the prosecution as to which charge of the eighteen distinct matters proven at the trial the prosecution would demand a conviction, nor did he request an instruction bearing upon this point, and the court of its own motion did nothing to indicate to the jury that these separate transactions were separate and distinct offenses. Indeed, the theory of the prosecution was that these several acts were part of one offense, and that the embezzlement of all the various sums constituted one single act of embezzlement with which the plaintiff in error was charged. This view was evidently adopted by the trial court and was undoubtedly the only one considered by the jury as the verdict discloses. The plaintiff in error was found guilty of embezzlement and the amount of the property embezzled was fixed in the verdict at $151.75, which is the aggregate of the rents collected from Martilla for eighteen months. It seems to us that the offense of embezzlement was complete in each month, as all the elements of the crime were present, and the offense of embezzlement was complete. These monthly offenses were not dependent upon each other, and taken together do not constitute a single fact of one endeavor. Neither was the offense a continuing one, as it presents none of the conditions of the old illustration,

that of a felonious taking of gas from a main or wine from a butt by means of a tube, where the felonious asportation was uninterrupted and continuous. The receipt of the money was shown, the report that the house for which the rent was collected was vacant, which was tantamount to a denial of the receipt of the money for it, the false accounting, and the failure to pay over or account for the money present for each month a clear case of embezzlement and all the elements of the crime. Each transaction is separate and distinct and in no manner dependent upon another. If one commits an embezzlement by a series of connected transactions from day to day, a charge of embezzlement on a single day will cover and admit evidence of the whole. 1 Bishop Crim. Proc., 397. Wharton Crim. Law, sec. 1817. The case of Brown v. State, 18 Ohio St., 496, 513, is cited by Mr. Bishop in support of his text. The evidence in that case showed a continuous series of conversions of money, in pursuance of a conspiracy, and it was held sufficient to support a finding by the jury of the aggregate sum as the amount of a single embezzlement, which the court held "it was in fact and in law," and very properly said: "Were it otherwise, the particular conversion could never be ascertained or proven, and there would have to be, in some cases, almost as many counts as there were dollars embezzled." So in Gravatt v. State, 25 Ohio St., 162, one of the grounds of error alleged related to the action of the trial court in overruling the motion to require the prosecuting attorney to elect upon which of the charges he would claim a conviction from the evidence. This election related to several sums of money collected from two different persons at different times, both of which sums were relied on to prove the charge of embezzlement. The court said: "We see no error in the action of the court. The money, it is true, was received at different times from different persons. But the collection of these several sums by the plaintiff in error was lawful, and in due course of his employment. The evidence did not show a distinct and independent conversion of both sums in one transaction."

We have carefully examined the case of Campbell v. State,

35 Ohio St., 70, which is strongly relied upon by the prosecution. A motion was made in the trial court to compel the prosecutor to elect upon which transaction he would rely for a conviction, which was denied. It is intimated in the opinion that at the time this motion was made, the jury might well have found that no part of the moneys collected by the defendant had been appropriated to his own use, until after the several sums had been received, and that the whole amount was converted and appropriated by the same act. The defendant had collected notes which had come into his possession at different times and the proceeds were collected at different times and places, yet if the whole amount was shown to be in his hands at one time, and was embezzled in one transaction, it was held that but one offense had been committed. In this case, the defendant was charged with the embezzlement of different sums from different persons in one count in the indictment. There had been a demand for an accounting and payment long before the indictment was found, and the jury found the defendant guilty of embezzling the amount collected from one person, less the commission. So in the case cited, there was a verdict of guilty upon but one transaction. These Ohio cases were all reviewed in a case more analogous to the cause at bar, that of Myers v. The State, 4 Ohio Cir. Ct., at page 573, and the following conclusion was reached:

"We think that there is strong implication in these cases that if the proof has shown that the conversions were at wholly different times, that the election should have been made, as is expressly held in 27 Ohio St. (Stockwell v. State, 563) and 30 Ohio St. (Bainbridge v. State, 264), before cited, if the rule is the same in cases of embezzlement as in others, which, we think it must be."

In the case of Sprouse v. Commonwealth, 81 Va., 374, a defendant was convicted on an indictment, one count of which it was asserted presented a case of duplicity, a charge of the forgery of a check and the forgery of an endorsement thereon. The same objection was made to the second and remaining count that the charge was double in alleging an alteration of

the check and of the endorsement. The court held that each count related to but one offense and one single fact of endeavor, and that the prisoner could not have been embarrassed. But this case considers the forgery of the check and the forgery of the endorsement as but one transaction and constituent and component parts of the same cheat and fraud. It is not a parallel case to the one at bar, where each act of embezzlement is separate and independent of the other, and the various transactions are separated from each other by an interval of a month, and have no relation to each other.

The cases of State v. Pratt, 98 Mo., 11 S. W., 977, is also cited to sustain the position of the prosecution that under a statute somewhat broader than ours declaring an indictment for larceny or embezzlement sufficient which describes the money stolen or embezzled simply as "money," that it is not necessary to prove more than the embezzlement of a lump sum of money, but an examination of a succeeding paragraph of the opinion does not sustain such a contention, as the court remarks that where the offense of embezzlement is committed by a trusted servant and the abstractions occurred daily or whenever cupidity prompts, it is an impossible thing to describe the identical money taken or the precise date when it was abstracted, which led to the enactment of the statute of that State, borrowed from the British statute. However, we have no such provision as that contained in the acts of Parliament permitting an allegation in one count of the indictment of different acts of embezzlement committed in the space of six months by the same servant against the same master, and this distinction is clearly made in the case of Myers v. State, 4 Ohio Circuit, 575, between the British statute and the general rule requiring that but one offense be stated in one count of the indictment.

The case of Ker v. People, 110 Ill., 627, is not in point. It was not necessary under the Illinois statute to allege the particulars of the embezzlement. The court in the case last cited is careful to say that where separate and distinct acts of embezzlement are susceptible of direct proof, the rule might be otherwise than for a prosecution for one act of em-

bezzlement for the "aggregate result" of the series of acts. This is undoubtedly the true rule in the absence of a statute, and where it is within the power of the prosecution to allege and prove one distinct act of embezzlement, which renders the offense complete, it should be held to the rule, especially where the indictment makes a single accusation of a single offense. Cases frequently arise, where the exact time and manner of the embezzlement can not be proven, and is not susceptible of other proof than the shortage or deficit of the one sustaining to the client or employer the fiduciary relation, after demand for an accounting and payment. In such a phase of the question, the prosecution would be unable to prove more than the defalcation of the aggregate sum embezzled. In the case of State v. Noland (Mo.), 19 S. W., 722, a public official was charged with the embezzlement of public funds, and although three different sums were traced into the hands of the defaulting officer, the court said that for aught that the record disclosed, he converted it all at one time. In the case at bar, there were eighteen distinct conversions at eighteen distinct periods, as the false accounting and report that the house was vacant for which the rent was collected constituted in itself a conversion and appropriation and made the offense complete. We do not decide what the effect would have been if the plaintiff in error had been charged with eighteen different embezzlements in separate counts of the indictment, each being a felony under the statute. Such a procedure has been denounced by some courts and approved by others. The authorities are collected and considered at length on this proposition in the famous and much criticised case of People ex rel. Tweed v. Liscomb, 60 N. Y., at page 574, et seq. The case at bar presents no such question, but on the contrary compels us to decide whether a man may be convicted of eighteen distinct felonies when he is charged with but one felony, and whether these separate offenses may be treated as one offense. Although it would appear that the plaintiff in error had not been prejudiced when he has been sentenced to an imprisonment of three years, when the statute permits the imposition of a sentence of fourteen years for one distinct

offense of embezzlement, and that he might be subjected to a longer term by being tried for eighteen offenses upon eighteen different indictments, or in eighteen counts in one indictment, yet we are unwilling to establish the rule that where the nature and cause of the accusation has been specifically confined to one allegation of crime, that the defendant may be convicted of more than one crime. It may be possible that since embezzlement of any property of any value is now a felony, it is not necessary for the jury to ascertain the value of the property embezzled, as directed by sec. 3317, Rev. Stat. (McDaniels v. People, 118 Ill., 301), yet the jury did so, and the verdict was permitted to stand. A verdict of guilty of any of the sums embezzled at any of the times proven, we should have held good, as it would have shown that the jury considered but one transaction and but one offense, and were not influenced by the proof of several distinct acts of embezzlement. That they were influenced by such evidence and treated these various acts as one offense is clear from the record. This was error, and there is no alternative but to grant a new trial of the cause, which it is due to ourselves to say, is done very reluctantly, and only after this court has been thoroughly convinced that to sustain this verdict would be dangerous to the rights of the citizen. No man should be tried or convicted for several offenses when he is charged with but one.

We have not considered many of the alleged errors committed during the trial, as we are compelled to reverse the cause for the reasons above stated. It is well to call attention to one point raised by counsel for plaintiff in error. The indictment charges that the money embezzled was "in lawful money of the United States of America." No proof was adduced to show that the money embezzled was such. It may not have been necessary to show this fact, as the presumption might be that the money was a legal tender and could have been nothing but lawful money of the country. Yet there are some cases that appear to hold to the contrary. It would have been safer to have alleged as permitted by the statute that the defendant embezzled "money" without alleging more, and it would have been better to have proved under the indict-

ment that the money paid for rents was lawful money of the United States. We do not care to determine this question now, as it is unnecessary to do so.

The judgment of the district court for Carbon county is reversed and the cause is remanded for a new trial in conformity with the views herein expressed.

CONAWAY and CLARK, JJ., concur.