2006 WY 40

**Tomika Johari JONES, Appellant
(Defendant),**

**v.**

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 04–35.

Supreme Court of Wyoming.

April 6, 2006.

Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Appellate Counsel, for Appellant. Argument by Mr. Roden.

Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Dee Morgan, Senior Assistant Attorney General, for Appellee. Argument by Ms. Morgan.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Tomika Jones appeals her criminal conviction for escape in violation of Wyo. Stat. Ann. § 7–18–112 (LexisNexis 2001).[1] Jones requests this Court review whether § 7–18–112 is constitutional, whether sufficient evidence supports her conviction, and whether she was denied her right to counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. Finding no reversible error, we affirm.

## ISSUES

[¶ 2] Jones presents the following four issues for our review:

I. Whether W.S. § 7–18–112 is unconstitutional because it is facially vague.

II. Whether W.S. § 7–18–112 is unconstitutional as applied in Appellant's case.

III. Whether the evidence was sufficient to convict Appellant of escape, when the State did not prove beyond a reasonable doubt Appellant failed to remain within the extended limits of her confinement.

IV. Whether Appellant's Sixth and Fourteenth Amendments' right to counsel was violated when she was not appointed counsel at a critical stage of the criminal proceedings, the preliminary hearing.

## FACTS[2]

[¶ 3] Jones was ordered to complete a six month residency program at Community Alternatives of Casper (CAC) as a result of an unrelated felony conviction. Jones entered

---

1. Jones was charged with escape under the 2001 statute, which read:

   (a) An offender, parolee or an inmate is deemed guilty of escape from official detention and shall be punished as provided by W.S. 6–5–206(a)(i) if, without proper authorization, he:

   (i) Fails to remain within the extended limits of his confinement or to return within the time prescribed to an community correctional facility to which he was assigned or transferred; or

   (ii) Being a participant in a program established under the provisions of this act he leaves his place of employment or fails or neglects to return to the community correctional facility within the time prescribed or when specifically ordered to do so.

   In 2003, Chapter 18, including this section, was amended by adding the word "adult" before "community correctional facility." 2003 Wyo. Sess. Laws ch. 42, § 1. The amendment is not material to the outcome of this opinion.

2. The facts are set forth in accord with our standard of review that we accept the facts most favorable to the verdict.

residency at CAC on October 23, 2002. CAC is an adult community corrections facility.

[¶ 4] As a condition of her admission to CAC, Jones was required to maintain employment. Jones was thus authorized to leave the CAC facility to go to her place of employment for the purpose of working. Jones completed the sign-out and sign-in forms for each trip to work. On October 28, 2002, Jones informed her case manager she had been evicted from her apartment and she needed to move her belongings out of the apartment by November 11. Jones' case manager informed Jones she would either have to get someone else to move her belongings or she would have to set up a time with CAC when a CAC staff member could monitor her. Jones availed herself of neither of these two options. Instead, on November 4, 2002, Jones signed out to go to work and to a counseling session. She returned approximately three and a half hours later. She stated on her sign-in form that she had not worked because she was off that day. CAC verified Jones had not worked that day nor had she been to counseling. When questioned, Jones admitted she had gone to her apartment to remove her belongings without authorization. CAC sanctioned Jones for being at an unauthorized location. Jones was warned by her case manager that any further unauthorized movements by Jones could result in more serious consequences, including a charge of escape.

[¶ 5] After that incident, CAC continued to authorize Jones to leave CAC to go to work and various other authorized locations as necessary. On November 22, Jones signed out at 8:15 in the morning to go to work. She also signed out to go to the self-help center and the courthouse for the purpose of filing a stalking order against a person allegedly harassing her. Later that morning a staff member of CAC reported seeing Jones in the community at a location he did not believe Jones was authorized to be. CAC phoned Jones' employer and discovered that, not only was Jones not at work, Jones had not reported to work since No-

vember 10. CAC phoned the other places Jones had signed out to go and was told that she was not currently [3] present at any of these other locations. CAC reported Jones as an escape to the Department of Corrections. Jones returned to CAC at approximately 6:15 that evening, where she was informed she had been listed as an escape.

[¶ 6] Knowing Jones had not reported to work since November 10, CAC reviewed Jones' sign-out sheets. CAC found that Jones had signed out to go to work on at least four different occasions between November 11 and November 22. Upon receiving this information, the State charged Jones with one count of escape in violation of § 7-18-112(a)(i). During trial, the State introduced evidence of four different occasions between November 11 and November 22 when Jones signed out to go to work but her time cards proved she was not at work. After trial, a jury convicted Jones of escape as charged.

## DISCUSSION

### Constitutionality of § 7–18–112

[¶ 7] On appeal, Jones challenges the constitutionality of § 7–18–112. Jones waived this issue by not filing a motion to dismiss or in any other manner challenging the constitutionality of the statute before the district court. The general rule of this Court is that it will not review issues that were waived below and raised for the first time on appeal unless the issue involves jurisdiction or a right so fundamental in nature that the court must take cognizance of it. *Kenyon v. State*, 2004 WY 100, ¶ 12, 96 P.3d 1016, 1022 (Wyo.2004), *cert. denied*, 543 U.S. 1175, 125 S.Ct. 1389, 161 L.Ed.2d 158 (2005). In her brief Jones presents no argument to this Court as to why we should invoke either of these exceptions and accept review of her constitutional challenges.

[¶ 8] The issue does not raise jurisdictional concerns. There is a strong presumption in favor of the constitutionality of a statute. *Giles v. State*, 2004 WY 101, ¶ 10, 96

---

3. Information received by CAC later indicated that Jones had been to the courthouse but had

not been to either of the other two locations.

P.3d 1027, 1030 (Wyo.2004). A trial court unquestionably has subject-matter jurisdiction over a controversy stemming from a violation of a state law that is presumptively valid. Neither do we find the alleged infirmity so fundamental as to compel this Court to undertake review for plain error under W.R.Cr.P. 52(b). The main constitutional arguments propounded by Jones all revolve around one complaint: no person of ordinary intelligence, and specifically Jones, could know that § 7–18–112 could, and would, be applied to the instant fact pattern. Jones, however, was specifically warned by her case manager that any unauthorized movements by Jones, such as the November 4 incident for which she was sanctioned, could lead to an escape charge. Thus, Jones had fair warning that her conduct could be considered escape without reference to the statute. *See In Interest of JG,* 742 P.2d 770, 775 (Wyo. 1987). Under these circumstances, this Court sees no reason not to hold Jones to her waiver of the issue.

### Sufficiency of the Evidence

*Standard of Review*

▉▉▉▉ [¶ 9] When reviewing for sufficiency of the evidence, this Court accepts as true the State's evidence, affording to the State those inferences which may be reasonably and fairly drawn from that evidence. This Court does not consider the evidence in conflict with the State's evidence and the inferences therefrom. Our duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Leyo v. State,* 2005 WY 92, ¶ 11, 116 P.3d 1113, 1116–17 (Wyo.2005); *Brown v. State,* 2005 WY 37, ¶ 18, 109 P.3d 52, 57 (Wyo.2005).

[¶ 10] Jones argues that this Court should alter its established standard of review for sufficiency of the evidence claims. She presents an argument almost identical to that made in the recent case of *Leyo,* ¶¶ 12–16, 116 P.3d at 1117–18. Because we have already dispensed with this argument in *Leyo,* we will not address it further.

*Evidentiary Sufficiency*

[¶ 11] Jones argues the State did not prove beyond a reasonable doubt that she did not have authorization to leave the extended limits of her confinement. In support of this argument, Jones relies on testimony to the effect that occasionally, when a resident was already in the community pursuant to prior authorization, the resident could call in and CAC would authorize a further movement over the phone. Thus a movement could be authorized although it did not appear on the sign-out sheet. While a telephonic authorization should have been recorded in a call log, testimony at trial suggested not all phone calls were properly logged. Jones thus argues it is impossible for the State to prove she did not call in and receive authorization to be somewhere other than the location she put on her sign-out sheet.

▉▉▉▉ [¶ 12] While we do not necessarily agree with Jones' theory, we find no need to address it. Jones' contention is premised on the assumption that the only material issue under the statute is her location. We disagree that the scope of the statute is to be so narrowly construed. Her sufficiency argument, therefore, is subsumed in the greater discussion of the construction of the statute.

Instead of a sufficiency of the evidence issue, this Court is actually presented with a question of statutory interpretation and application of the facts to the statute. This Court reviews questions of statutory interpretation de novo. The rules of statutory construction are well-established:

> In interpreting statutes, if the statutory language is clear and unambiguous, we must abide by the plain meaning of the statute. *Adobe Oil & Gas Corporation v. Getter Trucking, Inc.,* Wyo., 676 P.2d 560 (1984). If a statute is ambiguous, however, we will resort to general principles of statutory construction in the effort to ascertain legislative intent. *State v. Sodergren,* Wyo., 686 P.2d 521 (1984). A statute which is uncertain and susceptible of more than one meaning is ambiguous. *McArtor v. State,* Wyo., 699 P.2d 288 (1985). In addition, we have said that "[s]tatutes should be given a

reasonable, practical construction." *State Bd. of Equalization v. Cheyenne Newspapers, Inc.,* Wyo., 611 P.2d 805, 809 (1980). Further, "all portions of an act must be read in pari materia, and every word, clause and sentence of it must be considered so that no part will be inoperative or superfluous," *Hamlin v. Transcon Lines,* Wyo., 701 P.2d 1139, 1142 (1985), and a statute should not be construed to render any portion of it meaningless, *Reliance Ins. Co. v. Chevron U.S.A. Inc.,* Wyo., 713 P.2d 766 (1986), or in a manner producing absurd results, *State v. Sodergren,* supra. Also, ambiguity in a criminal statute should be resolved in favor of lenity. *Capwell v. State,* Wyo., 686 P.2d 1148 (1984).

*KP v. State,* 2004 WY 165, ¶ 22, 102 P.3d 217, 224 (Wyo.2004) (quoting *Story v. State,* 755 P.2d 228, 231 (Wyo.1988)).

[¶ 13] Jones was charged with violating § 7–18–112(a)(i):

(a) An offender, parolee or an inmate is deemed guilty of escape from official detention and shall be punished as provided by W.S. 6–5–206(a)(i) if, without proper authorization, he:

(i) Fails to remain within the extended limits of his confinement. . . .

There is no question that Jones was in official detention. What remains to be determined is the exact nature of the extended limits of confinement beyond which Jones could not go without authorization.

[¶ 14] The statute at issue is found in Chapter 18 of Title 7. Chapter 18 is titled "Community Corrections." The stated legislative purpose of the chapter is to establish community correctional facilities and programs to help reintegrate low-risk felons into society. 1985 Wyo. Sess. Laws ch. 219. Towards that end, the act establishes community correctional facilities and programs, defined as:

a community based or community-oriented facility or program which is operated either by a unit of local government or by a nongovernmental agency which:

(A) May provide residential and nonresidential accommodations and services for offenders, parolees and inmates;

(B) Provides programs and services to aid offenders, parolees and inmates in obtaining and holding regular employment, in enrolling in and maintaining academic courses, in participating in vocational training programs, in utilizing the resources of the community in meeting their personal and family needs and in participating in whatever specialized treatment programs exist within the community; and

(C) Provides supervision for offenders, parolees and inmates as required.

Wyo. Stat. Ann. § 7–18–102(a)(i) (LexisNexis 2001) (amended 2003). Based on the purpose and definition, supervised release of residents into the community is anticipated (and indeed virtually required) by the statute in order for the program participants to engage in certain activities such as work, education and counseling.

[¶ 15] An adult community corrections facility, however, is still first and foremost a detention facility. The facility must meet certain requirements, such as maintaining "strict accountability procedures and practices for the conduct and supervision of offenders, parolees and inmates including requirements for twenty-four (24) hour supervision of offenders, parolees and inmates in residential programs." Wyo. Stat. Ann. § 7–18–107(LexisNexis 2001)(amended 2003). Thus, an adult community correctional facility must manage conduct and provide twenty-four hour supervision of residents while at the same time allowing the residents to enter the community for specific purposes intended to facilitate their reintroduction into society.

[¶ 16] It is in this context that we find § 7–18–112. Any escape provision relating to an adult community correctional facility must necessarily be tailored to the scope and purpose of such a facility. The general intent of the escape statute does not change. The statute logically is intended to define escape in a manner that penalizes residents who do not abide by the terms of their confinement. The language of the statute

therefore must encompass the unique nature of the terms of confinement in an adult community corrections facility.

[¶ 17] Looking again at the language of § 7–18–112, the meaning of the statute becomes clear. In an adult community corrections facility, residents may not leave the facility without authorization. Authorization for leave may be given for purposes consistent with the statute. Pursuant to Chapter 18, residents may be authorized to enter the community in order to pursue certain activities such as employment or counseling. If a resident receives authorization from the facility to attend counseling for instance, then the terms of that resident's confinement are extended to include the trips into the community for that specific purpose. Thus, the "extended limits of his confinement" would include the facility and authorized trips into the community for purposes of attending counseling. Should the resident, without authorization, leave the facility and enter the community for any purpose other than attending counseling, the resident has failed to remain within the extended limits of his confinement and is guilty of escape under § 7–18–112.

[¶ 18] The general principles upon which CAC operates are fairly simple to explain and understand. CAC residents are restricted to the CAC facility unless they have specific authorization to enter the community. This authorization is based upon not where the resident wants to go, but why. When Jones entered CAC, she was employed at Parkway Plaza. As a condition of her CAC residency program, she was required to maintain that employment (unless directed otherwise). In order to maintain her employment, Jones was authorized to leave CAC for the purpose of working. The location of her work happened to be Parkway Plaza. When she left CAC to go to Parkway Plaza, but then did not work, she went outside the extended limits of her confinement. Jones's argument that she could do anything she wanted that day and not be guilty of escape as long as she stayed at Parkway Plaza finds no support in the language of § 7–18–112, or indeed in logic.

[¶ 19] Thus, Jones is guilty of escape if she left CAC for the purpose of going to work but then never worked during the time she was away from CAC. The evidence is uncontradicted that Jones did just that. In order to monitor residents' activities, CAC requires residents to complete a sign-out form before departing from the CAC facility. Among other things, a resident is to indicate where she is going, for what purpose, and when she anticipates returning to CAC. Evidence was introduced at trial that on November 11, 15, 17 and 22, Jones signed out of CAC to go to work at Parkway Plaza. Her time cards from her employer, however, show that she did not work on any of those days. Jones' leaving CAC for an unauthorized purpose clearly meets the definition of escape under § 7–18–112.

[¶ 20] Despite these four instances of criminal conduct, the State charged Jones with only one count of escape. The jury was instructed that the elements of escape were:

1. On or about the 11th day of November, 2002, through on or about the 25th day of November, 2002

2. In Natrona County, Wyoming

3. The Defendant, Tomika Johari Jones

4. Escaped by failing to remain within the extended limits of her confinement, without proper authorization

5. Said confinement being the result of a felony conviction.

The jury convicted Jones of one count of escape on a general verdict form.

[¶ 21] Citing to *Bush v. State*, 908 P.2d 963 (Wyo.1995), and *May v. State*, 2003 WY 14, 62 P.3d 574 (Wyo.2003), Jones contends that, since the State failed to specify which date it was basing the charge on, and evidence was presented regarding specific activities on four different dates, the guilty verdict must be set aside unless the evidence is sufficient to prove escape beyond a reasonable doubt on all four dates. The problem in *Bush* and *May* was that the State instructed the jury on alternative means by which the charged crime could be committed. The jury rendered its verdict on a general verdict form. It was thus impossible to determine which alternative the jury had relied upon in

reaching its verdict. This Court thus held that, in order for the guilty verdict to be sustained, sufficient evidence must exist to support a finding of guilt as to each alternative.

[¶ 22]   In the instant case, the elements instruction given to the jury did not contain alternative theories upon which a conviction for escape could be based. The instruction follows the statutory language and such language contains all that is essential to constitute the crime. Pursuant to the statute, a specific date is not a requirement of the crime of escape. Because the specific date is not a material element of the crime, and the State did not allege that the crime occurred on one specific date, the jury was not required to determine Jones escaped on any particular date. Her escape conviction will stand if the record contains sufficient evidence that Jones escaped by failing to remain within the extended limits of her confinement, without proper authorization at any time between November 11 and November 22, 2002. *See Adams v. State,* 2003 WY 152, ¶¶ 19–22, 79 P.3d 526, 533 (Wyo.2003); *Huff v. State,* 992 P.2d 1071, 1077 (Wyo.1999) ("This Court has consistently ruled that the exact date of the offense is not required so long as the action or occurrence relied upon for conviction is sufficiently identified.").

[¶ 23]   The jury was instructed to find Jones guilty if the evidence offered by the State proved Jones met the defined elements of escape at any time between November 11 and November 22. The State chose to present evidence of Jones's activities on four distinct dates between November 11 and November 22. Jones places great reliance on the fact that on two of those dates she signed out of CAC to engage in other activities besides work, such as going to the courthouse for legal proceedings. Jones argues that for these two dates, the evidence is insufficient to prove she was unauthorized even though she didn't work. She cannot make that argument, however, for the other two dates. On those dates the only reason she left CAC was to go to work. Thus, regardless of any potential merit in Jones' argument, the evidence was sufficient, in fact uncontroverted, that Jones failed to remain within the extended limits of her confinement, without proper authorization, on at least one occasion between November 11 and November 22, 2002.[4]

### *Preliminary Hearing*

[¶ 24]   Jones' allegation that she was denied her right to counsel at her preliminary hearing is easily disposed of. Jones appeared at her preliminary hearing without counsel. There is no official record of what occurred during the hearing except both parties agree the judge did not inquire of Jones at the beginning of the hearing whether she was affirmatively electing to proceed pro se and that at the end of the hearing the judge appointed the public defender's office to represent Jones, although not at Jones' request. Even if Jones is correct in her contention that she was denied the right to counsel at the preliminary hearing, such alleged error is still subject to harmless error analysis. The alleged denial of counsel was limited to the preliminary hearing and did not affect the entire criminal proceeding. *See Satterwhite v. Texas,* 486 U.S. 249, 257, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988).

[¶ 25]   Approximately two and a half months after her arraignment, almost five months after the preliminary hearing, Jones filed a motion for a remand for a new preliminary hearing. After a hearing on the motion, the trial judge denied the motion on the grounds that, at the preliminary hearing, Jones waived her right to counsel. While we have grave concerns regarding the analysis and decision of the trial court, any potential error on the part of the district court was

---

4.   Following oral arguments and a review of the appellate briefs, this Court requested additional briefing on the issue

whether [Jones'] conviction of one count of escape is legally sustainable in light of the presentation by the State of evidence indicating multiple acts of escape, growing out of distinct and separate transactions, without specifying to the jury the specific act upon which it was relying for conviction, or instructing the jury that it must unanimously agree on the specific act of [Jones] constituting escape. After due consideration of the parties' supplemental briefs, we conclude that the legal arguments presented do not compel us to consider the issue further.

harmless. Importantly, Jones presents no argument that any substantial right was affected by the alleged denial of counsel at the preliminary hearing. Generally, it is simply nonsensical to allege, after conviction, that prejudicial error affecting defendant's substantial rights occurred in the preliminary hearing:

[A] main purpose of a preliminary hearing, as we have noted, is to afford the accused a chance to secure his immediate release by persuading the Commissioner that there is no probable cause to hold him on the charges in question. Where, as here, the accused has been found guilty of those charges in a full-scale trial that we have otherwise found to be free of error, the chances that he could persuade a magistrate that no probable cause exists for his continued detention are perhaps not ungenerously to be characterized as speculative.

*Trujillo v. State*, 880 P.2d 575, 582–83 (Wyo. 1994) (quoting *Blue v. United States*, 342 F.2d 894, 901 (D.C.Cir.1965)). The probability of proving prejudicial error under these circumstances is remote and in fact has not been met in this case.

## CONCLUSION

[¶ 26] We find no prejudicial error in the proceedings below. Jones waived her challenge to the constitutionality of § 7–18–112 by not raising it below. The evidence was sufficient to support her conviction of one count of escape. Any alleged error on the part of the district court in refusing to remand Jones' case for a new preliminary hearing was harmless.

VOIGT, Justice, dissenting, in which BURKE, Justice, joins.

[¶ 27] I respectfully dissent. The alleged crimes in this case were improperly charged and the jury was improperly instructed. As a result, we do not know what alleged conduct, on what date, formed the basis for the conviction. This case is not like *Huff v. State*, 992 P.2d 1071, 1077 (Wyo.1999), relied upon by the majority, wherein we reiterated the rule that the State need not prove the exact date of an offense "so long as the action

or occurrence relied upon for conviction is sufficiently identified." Here, the exact dates of the four separate events were well-known to the State and became part of the proof.

[¶ 28] Neither is this case like *Bush v. State*, 908 P.2d 963, 966–68 (Wyo.1995), relied upon by the appellant, wherein we reversed Bush's burglary conviction because the State failed to produce sufficient evidence to prove that Bush entered the particular building with both the intent to commit larceny and the intent to commit a felony. The elements instruction given to the jury in *Bush* alleged both statutory bases for burglary, and there was no special verdict form "particulariz[ing] the underlying crime that supports the burglary conviction." *Id.* at 967. *Bush* involved a criminal statute that could be violated in multiple ways. This case involves allegations of multiple violations of a single statute.

[¶ 29] The mischarged Information and the general verdict form in this case violated the doctrine of charging duplicity described in *McInturff v. State*, 808 P.2d 190, 193 (Wyo.1991):

Secondly, the amended information impermissibly combines several separate and independent offenses into one count. Even if there was no issue of improper amendment the information as amended would be void for duplicity on this basis. *Edelhoff v. State*, 5 Wyo. 19, 36 P. 627 (1894). This court has said that "[n]o man should be tried or convicted for several offenses when he is charged with but one." *Edelhoff*, 5 Wyo. at 33, 36 P. at 632. That is precisely what happened to McInturff as the result of the amended information and its supplemental bill of particulars.

McInturff, charged with a single count in violation of W.S. 6–3–403(a)(i), was actually convicted for the aggregate of several separate and distinct violations of that statute, as is evident from the state's bill of particulars and proof at trial.

[¶ 30] *McInturff* follows the general rule against duplicitous charging, which rule has been outlined as follows:

Duplicity is the charging of separate offenses in a single count. This practice is

unacceptable because it prevents the jury from deciding guilt or innocence on each offense separately and may make it difficult to determine whether the conviction rested on only one of the offenses or both. Duplicity can result in prejudice to the defendant in the shaping of evidentiary rulings, in producing a conviction on less than a unanimous verdict as to each separate offense, in determining the sentence, and in limiting review on appeal. Also, where the jury is not able to reach a verdict or renders a guilty verdict that is later overturned, the defendant may be subjected to a second trial that exposes him to double jeopardy insofar as it includes an offense on which the original jury would have acquitted if required to render separate verdicts.

4 Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, *Criminal Procedure* § 19.3(c), at 775 (2d ed.1999). *See also* 1 Nancy Hollander, Barbara E. Bergman, Melissa Stephenson, & Theresa M. Duncan, *Wharton's Criminal Procedure* § 5.12, at 5–62 (14th ed. 2005) ("To determine if an indictment is duplicitous, the court must determine whether only one violation can be found in each count.").

[¶ 31]   The reason that duplicitous charging is forbidden is brought home by what happened in this case. Instruction No. 6 quoted the Information, including the allegation that the alleged escape from official detention took place "on or about the 11th day of November, 2002, through on or about the 25th day of November, 2002[.]" These dates were repeated as an element of the charged crime in Instruction No. 7. As noted by the majority, however, the State produced evidence of at least four separate incidents of escape.[5]  Apparently recognizing the problems caused by the charging duplicity, the jury sent the judge the following note:

> Do we have to focus on the 11/22/03 [*sic.*]?
> or
> Do we *have* to consider 10, 11, 15, 17, 21, & 22?

The district court's one-line response—"With regard to your question concerning the dates,

you are directed to Instruction Nos. 6 and 7."—did nothing to correct the problem. The result, as stated at the beginning of this dissent, is that we simply do not know what conduct formed the basis for the conviction. *See Mueller v. State*, 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo.2001) ("the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed.").

[¶ 32]   I would reverse the conviction.

---

5.   The dates of incidents for which proof was presented were November 10, 11, 15, 17, 21 and

22.   November 10 was the last day the appellant actually worked at Parkway Plaza.