Christopher John CAPWELL,
Appellant (Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 83–210.

Supreme Court of Wyoming.

Aug. 8, 1984.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Laramie, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Roger Fransen, Asst. Atty. Gen., for appellee; oral argument by Roger Fransen, Asst. Atty. Gen.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

CARDINE, Justice.

This appeal is from appellant Christopher Capwell's conviction of attempted first degree sexual assault for which he was sentenced to a term of not less than five nor more than ten years.

We will affirm the conviction but remand for resentencing.

On December 21, 1982 appellant, Capwell, knocked on the door of the victim's apartment asking to speak to "John." The victim was home alone and informed Capwell that no one named John lived there. She then called her husband at work, who agreed to return home immediately. Capwell left but shortly thereafter returned to the apartment requesting again to speak to John. He broke into the apartment, cornered the victim, and told her to get undressed. When she refused, he grabbed her by the hair, pulled her to the floor, and began forcibly removing her clothes.

At this point the victim's husband and a friend, Tim Arnold, arrived at the apartment and saw Capwell kneeling over the partially nude victim. Capwell got up and left the apartment. The victim's husband and Mr. Arnold followed, keeping Capwell in view until he was arrested by a policeman who had responded to the husband's call.

Appellant could have been charged with attempted first or second degree sexual assault under §§ 6-4-314 and 6-4-302(a)(i), W.S.1977. Section 6-4-314, attempt, provided:

"Whoever perpetrates an assault or assault and battery upon anyone with intent to commit a sexual assault in the first or second degree, shall, upon convic-

tion, be imprisoned in the penitentiary not less than one (1) year nor more than five (5) years."

Section 6–4–302(a)(i), sexual assault in the first degree, provided:

"(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits a sexual assault in the first degree if:

"(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement * * *."

The prosecution elected, however, to charge appellant with attempted first degree sexual assault by alleging an attempt under § 6–1–201(a)(i), W.S.1977, Cum.Supp. 1982 [1], to violate the provisions of § 6–4–302(a)(i), W.S.1977, supra.

By charging appellant under the general attempt statute, § 6–1–201(a)(i), supra, with attempted first degree sexual assault, rather than under the specific statute, § 6–4–314, supra, with attempted first or second degree sexual assault, the penalty to be imposed upon conviction [2] was five to fifty years rather than one to five years. The question we must decide is whether attempted sexual assault in the first or second degree can be charged under either statute at the election of the State, or whether attempted sexual assault in the first or second degree can only be charged under § 6–4–314, W.S.1977, supra.

A statute making rape a crime was first adopted in Wyoming in 1899 with the enactment of § 4964, Revised Statutes of Wyoming, 1899, which provided:

"Whoever unlawfully has carnal knowledge of a woman forcibly and against her will, or of a woman or female child under the age of eighteen years, either with or without her consent, is guilty of rape, and shall be imprisoned in the penitentiary for a term not less than one year, or during life."

Attempted rape was not a crime until the adoption in 1911 of chapter 83, § 1 of the Session Laws of Wyoming, 1911 which provided:

"Whoever perpetrates an assault or assault and battery upon any female with intent to commit the crime of rape, shall, upon conviction, be imprisoned in the penitentiary not less than one year nor more than fifty years."

These statutes governing rape and attempted rape were simple, general statements of the common law. 65 Am.Jur.2d Rape § 2. They remained in effect until 1977 when the legislature undertook a comprehensive revision of the statutes pertaining to rape with the enactment of chapter 70 of the Session Laws of Wyoming, 1977. This revision substituted the term "sexual assault" for the term "rape," provided four degrees of sexual assault with a different penalty for each degree and adopted a specific statute, § 6–4–314, W.S.1977, supra, making attempted sexual assault in the first or second degree a crime punishable by imprisonment for a term of one to five years.

---

1. Section 6–1–201(a)(i), W.S.1977, Cum.Supp. 1982, provided:
 "(a) A person is guilty of an attempt to commit a crime if:
 "(i) With the intention of committing the crime, he does any act which is a substantial step towards commission of the crime. A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's intention to complete the commission of the crime * * *."

2. Section 6–1–204, W.S.1977, Cum.Supp.1982, provided:
 "The penalty for attempt, solicitation and conspiracy is the same as the penalty for the most serious offense which is attempted, solicited or is an object of the conspiracy except that an attempt, solicitation or conspiracy to commit a capital crime is not punishable by the death penalty if the capital crime is not committed."

 Section 6–4–306, W.S.1977, provided in part:
 "(a) A person convicted of sexual assault who does not qualify under the criteria of subsection (b) of this section shall be punished as follows:
 "(i) For sexual assault in the first degree, imprisonment for not less than five (5) nor more than fifty (50) years."

In 1981, the legislature adopted a general attempt statute which made an attempt to commit a crime unlawful. The attempt was accomplished by undertaking any act that was a substantial step toward the commission of the crime, § 6–1–201(a)(i), supra. The penalty for conviction of the attempt was the same as for the commission of the underlying crime, § 6–1–204, W.S.1977, Cum.Supp.1982, supra.

■ The State contends that the general attempt statute, being the later enactment, repealed by implication the specific statute relating to attempted first degree sexual assault, § 6–4–314, supra. We disagree.

"Repeals by implication are not favored * * * [and] the party so asserting bears 'the burden of demonstrating beyond question that the legislative body by its later action evinced an unequivocal purpose of effecting a repeal.' * * * What must be shown is that the latter statute is so repugnant to the earlier one that the two cannot stand together, or that the whole subject of the earlier statute is covered by the latter one having the same object, clearly intending to prescribe the only rules applicable to the subject." Nehring v. Russell, Wyo., 582 P.2d 67, 73 (1978).

Where the statutes being considered are a special statute and a general statute relating to the same subject, as in this case, the policy against implied repeals has special force, there being a presumption that the special or specific act was intended to remain in force as an exception to the general or broad act. Baltimore Nat. Bank v. State Tax Commission of Maryland, 297 U.S. 209, 56 S.Ct. 417, 80 L.Ed. 586 (1936). ■ We presume that the legislature enacts legislation with full knowledge of existing law and with reference to other statutes and decisions of the courts. Such legislation should, therefore, be construed in a way that creates a consistency and harmony within the existing law. Civic Ass'n of Wyoming v. Railway Motor Fuels, 57 Wyo. 213, 116 P.2d 236 (1941). Statutes should be construed in pari materia

and if the special act is inconsistent with the general law, the provisions of the special act will control, Carpenter & Carpenter, Inc. v. Kingham, 56 Wyo. 314, 109 P.2d 463 (1941).

" * * * 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. Where the special statute is later, it will be regarded as an exception to or qualification of the prior general one; and where the general act is later the special statute will be considered as remaining an exception to its terms unless it is repealed in general words or by necessary implication.' " 2A Sutherland Statutory Construction (4th Ed.1973), p. 315.

It was clearly the intent of the legislature by its 1977 enactments to adopt fully comprehensive legislation dealing with sexual assault by providing for four degrees of sexual assault with different penalties as punishment for violation of each, and providing by specific statute punishment for attempted first or second degree sexual assault with the penalty for violation therein specified. In enacting the general attempt statute and the penalty provision, the legislature made no effort to repeal § 6–4–314, W.S.1977, supra, nor was the statute referred to, mentioned, or even considered. Had the legislature intended to repeal § 6–4–314, supra, it could have done so by express legislative enactment. Failure to repeal the statute is at least indicative of an intent that it remain in effect as an exception to the general attempt statute.

■ We conclude, therefore, that the later enactment of a general attempt statute evidences no intention on the part of the legislature to do other than provide that an attempt to violate an existing criminal statute, where the legislature has not already spoken with respect to that statute, is a crime. Thus, the general attempt stat-

ute is operative when applied to statutes where the legislature has not already spoken; and where the legislature has enacted a special statute making the attempt a crime, the special statute will prevail. This construction gives effect to both statutes and a policy that ambiguity concerning the application of criminal statutes should be resolved in favor of lenity. It is in conformance with

"* * * the principle that gives precedence to the terms of the more specific statute where a general statute and a specific statute speak to the same concern, even if the general provision was enacted later. [Citations] This guide to statutory construction has special cogency where a court is called upon to determine the extent of the punishment to which a criminal defendant is subject for his transgressions. In this context, the principle is a corollary of the rule of lenity, an outgrowth of our reluctance to increase or multiply punishments absent a clear and definite legislative directive." *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 914, 55 L.Ed.2d 70 (1978).

■ For the reasons stated, we conclude that the enactment of § 6–1–201(a), supra, did not effect repeal of § 6–4–314, supra. Having found that the special statute § 6–4–314, supra, is, upon the facts of this case, the only statute applicable to a charge of attempted first or second degree sexual assault, it is apparent that appellant could only have been subjected to the penalty provided by this statute, i.e., imprisonment for one to five years.

■ A question still to be resolved is whether there must be a reversal of this case en toto requiring that appellant be charged anew and there be a retrial of the case or whether the conviction may be affirmed and the sentence corrected. This in turn depends upon whether the information charging the crime was sufficient to give notice of the crime charged.

The State contends that this case is factually identical to *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); but that is incorrect.

The Batchelder case dealt with two separate legislative enactments, each complete in itself, specifying the prohibited activity and the penalty for violation. In this case there is just one statute, § 6–4–302(a)(i), supra, making first degree sexual assault, the underlying offense, a crime. An attempt to violate the first degree sexual assault statute is made a crime by the specific intent statute. Here appellant was charged in an information that he

"* * * did unlawfully and feloniously, with the intent to commit a felony, *attempt* to unlawfully and feloniously inflict sexual penetration or sexual intrusion on a victim, by causing submission of said victim by the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement, * * * contrary to W.S. 6–1–201(a)(i), 6–4–302(a)(i), 1977 Republished Edition, contrary to the form of the statute in such case made and provided * * *." (Emphasis supplied.)

Had the attempt been charged under § 6–4–314, supra, the information might have also contained an allegation that appellant perpetrated an assault or assault and battery with intent to violate § 6–4–302(a)(i), supra, with an appropriate substitution of the number of the specific intent statute, § 6–4–314, supra, for § 6–1–201(a)(i), supra. The information, drawn in the language of § 6–4–302(a)(i), contains an allegation that submission of the victim was caused by the actual application of "physical force." The effect of this language is to charge the same crime as would have been charged under § 6–4–314, supra. Appellant, therefore, had notice of the charge against him and could not have been prejudiced in his defense. We note, also, that there was no dispute over the fact that appellant did perpetrate an assault and battery upon the victim.

■ With respect to the incorrect citation of number of the attempt statute, Rule 9, W.R.Cr.P., after providing that all prosecutions shall be by indictment or information, states:

"The indictment or information shall state for each count the \* \* \* citation of the statute \* \* \* which the defendant is alleged therein to have violated. Error in the citation or its omission or any other defect or imperfection which does not tend to prejudice any substantial right of the defendant upon the merits or to mislead the defendant to his prejudice shall not be grounds for \* \* \* reversal of a conviction."

The source of our Rule 9, with some minor modifications, is Rule 7, F.R.Cr.P. It was intended by adoption of the Rules of Criminal Procedure that the precision and detail in pleadings formerly demanded no longer be required, that matters of form not perfect but not prejudicial be ignored, and that common sense and reason prevail over technicalities. 1 Wright, Federal Practice and Procedure: Criminal 2d § 123. Although Rule 9 provides that the information shall recite the statute which defendant is charged with violating, it has been held that recitation of the statute is not an absolute requirement nor is it controlling, but is intended for the benefit of the defendant and to give notice of the charge against him. 1 Wright, Federal Practice and Procedure: Criminal 2d § 124. A failure to cite the statute or an incorrect citation of the statute which the defendant is alleged to have violated is not fatal nor does it require a reversal of the case, but bears only upon the question whether the defendant was confused to the point that he did not know the crime with which he was charged and was prejudiced in his defense. *PAZ Morales v. United States,* 278 F.2d 598 (1st Cir.1960); *Gariepy v. United States,* 189 F.2d 459 (6th Cir.1951).

In *Gonzales v. State,* Wyo., 551 P.2d 929, 931 (1976), we held:

"[I]t is only necessary to allege sufficiently to allow the accused to understand the charge and prepare his defense.

\* \* \* \* \* \*

"The law seems clear that where a defendant is not misled to his prejudice, an indictment is not invalid because it does not conform exactly to the language of the statute."

Appellant was charged here and found guilty of attempted first degree sexual assault. The elements of the crime of attempted first degree sexual assault were the same whether the attempt was charged under § 6–1–201(a)(i), supra, or under § 6–4–314, supra. The information filed and served upon appellant was fully effective to put him on notice that he was charged with the crime of attempted first degree sexual assault as fully as if the correct number of the attempt statute had been stated in the information. He was not prejudiced in his defense nor put at a disadvantage.

We hold, therefore, that the statutory citation in the information is not controlling and that where, as here, the appellant has full and fair notice of the crime charged, is not surprised nor confused nor prejudiced in his defense, but is afforded a full and fair opportunity to defend the charge against him, there is no basis for reversal of the conviction.

■ Appellant was convicted of attempted first degree sexual assault which, under our holding in this case, provides for a term of imprisonment of one to five years—not five to ten years as was imposed. Since the sentence is in excess of that authorized by law for the conviction of attempted first degree sexual assault, this cause, pursuant to the provisions of Rule 36, W.R.Cr.P.,[3] must be remanded to the district court for resentencing.

Appellant next contends that he was

---

**3.** Rule 36, W.R.Cr.P., provides:
"The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce the sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court having the effect of upholding the judgment of conviction. The court may

" * * * never adequately identified in court by the victim or any witness nor was there any waiver by the defendant or any binding stipulation as to identity."

Appellant, an indigent, was appointed counsel for his defense. His trial was scheduled to begin July 11, 1983. On the day of the trial, appellant requested that his attorney be discharged and different counsel appointed for his defense. Appellant informed the court that his attorney did not like him, that he had called him an "asshole" and kicked him. Appointed counsel denied kicking his client. The court asked appellant if there were any witnesses he wanted produced who were not there, any exhibits or evidence that he needed for his defense that were not available, or any other matter he wanted to bring to the court's attention. There were none. Appointed counsel advised the court that he was prepared and ready for trial and that he could defend appellant. The court denied the request for appointment of different counsel finding no factual basis or any other showing adequate to terminate appointed counsel's services.

Appellant then advised the court that he would refuse to appear in court or proceed with the trial. The court explained that the trial would proceed without him. The trial was recessed and appellant returned to jail by the sheriff. An hour later, after having had an opportunity to consider the matter and discuss it with his counsel, appellant was returned to the court's chambers. The court then, after advising appellant that the trial would proceed, stated:

"THE COURT: * * * Do you understand that you have the right to be present at your trial?

"THE DEFENDANT: Yeah, I understand that.

"THE COURT: I will grant that right to you throughout the trial at any time or at any stage of the proceedings you wish to come up and to be present at that trial to hear and to see any of the witnesses or to participate in your trial, let the jailers know and they will let me know

also reduce a sentence upon revocation of a

immediately. Periodically I will afford you the opportunity to talk to counsel in this matter to inform you what's going on during your trial.

"THE DEFENDANT: In other words, you're going to let me know when you find me guilty, right? Right?

"THE COURT: No, during the trial you will be informed. You have the opportunity now to hear and to see the witnesses, to be present throughout the trial, to observe the case being introduced against you, to exercise cross-examination. Whatever you wish to do in that regard [your appointed counsel] will be doing that in your behalf here in the courtroom while you are down in jail because you are in custody of the Laramie County Sheriff.

＊ ＊ ＊ ＊ ＊ ＊

"THE COURT: I should tell you that Rule 42 of the Wyoming Rules of Criminal Procedure also indicates that the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial on and including the return of the verdict. So there is provision. * * *

＊ ＊ ＊ ＊ ＊ ＊

"MR. GRANT: Your Honor, the State will request that he be present at the time the identification of the defendant is made by the complaining witness.

"THE COURT: Very well.

"THE DEFENDANT: How is that going to be accomplished?

"MR. GRANT: We'll have you brought up for identification purposes.

"THE DEFENDANT: Tied and bound or what?

"MR. GRANT: Whichever way you want to go.

"THE DEFENDANT: Okay, that's the way I want to go because if I'm not going to be here for the rest of the trial, there is no reason to be here to help the defense—I mean, the prosecution.

"THE COURT: Very well."

probation as provided by law."

 Rule 42, W.R.Cr.P., provides in part as follows:

"In prosecution for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict."

Rule 42, W.R.Cr.P., was, with some modification, adopted from and patterned after Rule 43, F.R.Cr.P. There is a good body of law construing the federal rule. Under the language of our statute, the defendant can waive his right to be present at his trial with the consent of the court. The court may continue the trial when the defendant voluntarily absents himself. The rule does not grant to the defendant a right of absence, and there is no due process violation should the court require his attendance at trial where identification is an integral part of the issues to be determined by the jury. *United States v. Moore,* 466 F.2d 547 (3rd Cir.1972), cert. denied 409 U.S. 1111, 93 S.Ct. 920, 34 L.Ed.2d 692 (1973). The waiver of right to be present at trial must be knowingly and voluntarily made; and when this appears to the satisfaction of the court,

"[t]he Constitution does not require the court to discontinue a trial once commenced if the defendant has voluntarily absented himself." *United States v. Partlow,* 428 F.2d 814 (2nd Cir.1970).

 It has long been recognized that such constitutional rights as the right to confront witnesses, right to public trial, right to not be put in double jeopardy, as well as the right to be present at trial, may be waived by defendant without affecting due process.

Regarding a defendant's presence at a felony trial,

" * * * it has been argued that the right is essentially for the benefit of the accused and that since the accused, by pleading guilty, can waive trial and subject himself to the severest penalty which might follow a trial, he should be able to waive any mere privilege on the trial that is designed only to aid him in shielding himself from such result." (Footnotes omitted.) 21A Am.Jur.2d Criminal Law § 925, p. 389, citing *State v. Rohrich,* N.D., 135 N.W.2d 175 (1965) and *Frank v. State,* 142 Ga. 741, 83 S.E. 645 (1914), error denied 235 U.S. 694, 35 S.Ct. 208, 59 L.Ed. 429 (1914); *Thomas v. State,* 117 Miss. 532, 78 So. 147 (1918).

 In this case the court, exhibiting considerable patience, advised appellant meticulously and in detail concerning his right to be present at the trial, to participate in the decisions being made, to confront witnesses, to cross-examine, advised appellant of the right not to be present and the rights he would be giving up by his absence, inquired of him if he understood all of these rights, and appellant said that he did. The record amply supports the court's finding that appellant's absence from trial during the presentation of the State's case was a knowing and voluntary decision on his part. After the State rested its case, the appellant then chose to be present during the remainder of the trial. There was no denial of due process nor was there error in proceeding with the trial in the defendant's voluntary absence.

 Appellant contends, however, that we should reverse his conviction because neither the victim nor any witness adequately identified him *in court* as the perpetrator of the crime charged. It was appellant who made an in-court identification impossible by refusing to appear unless "tied and bound." The law is conflicting over whether bringing defendant into court "tied and bound" for identification is violative of due process. The trial court avoided the problem by not requiring appellant's appearance. It is ironic that this appellant should complain about the lack of identification of himself as the perpetrator of this crime. There was no issue and no question raised concerning his identification as the person who was observed assaulting the victim, followed until apprehended by the police, arrested and held in jail, charged with the crime of attempted first degree sexual assault, held in jail, and then transported from jail to court for trial.

Appellant complains only that he was not identified as that person in court. That, of course, is unnecessary. It is only necessary that the person committing the crime be identified as the person charged in the indictment or information.

The burden is upon the prosecution to prove every essential element of the crime charged. The prosecution must prove the corpus delicti, that is that a crime has been committed, and also that the party charged committed that crime. The person charged must be identified as the perpetrator, but,

"The method of identification used in a criminal trial is a matter largely within the discretion of the trial court.

\* \* \* \* \* \*

"A witness may identify accused by his name if such fact is known by the witness of his own knowledge." 22A C.J.S. Criminal Law § 616.

In determining whether the State met its burden of identifying the person charged as the one who attempted the sexual assault of the victim as described in the information filed, this court will,

" * * * 'view the evidence presented in the light most favorable to the prosecution, leaving out of consideration any evidence in conflict therewith, while drawing all reasonable inferences possible therefrom. * * * ' " *Tageant v. State*, Wyo., 673 P.2d 651, 656 (1983), quoting from *Russell v. State*, Wyo., 583 P.2d 690, 700 (1978).

The victim testified that she had identified Christopher Capwell at his preliminary hearing as her assailant charged in the proceeding before the court. She stated she observed the same man outside the courtroom in the hall of the courthouse during the trial of this case.

Mr. Arnold identified Capwell for Officer Andreasen who took him into custody and transported him to the police station. Andreasen interviewed Capwell, testified that he was the same man whom he had taken to the station and who that morning he had seen a sargeant bringing up from jail for trial.

Officer McLaughlin conducted the investigation of this reported crime. He was asked the following questions and gave these answers:

"Q. Did you learn the identity of the person that was taken into custody?

"A. Yes, I did.

"Q. Who was that?

"A. His name was Christopher Capwell.

"Q. Is he the same Christopher Capwell who is the defendant in this matter?

"A. Yes, he is.

"Q. Was he here this morning earlier?

"A. Yes, he was.

"Q. Is he the same Christopher Capwell who's been in the custody of the Laramie County Jail from—well, throughout the intervening period?

"A. Yes, he was."

Applying our standard of review to the identification evidence in this case, we have no difficulty finding that the evidence was more than sufficient to satisfy the burden of the State to identify appellant as the person charged in the information with the commission of this crime.

Having found there was no error in the charge as presented in the information nor in the identification of appellant at the trial, the conviction of appellant is affirmed, but having also found that the sentence imposed upon the conviction was not a correct sentence under the law, this cause is herewith remanded to the district court for the purpose of correcting the sentence consistent with this opinion.