No. 93-309

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

    Plaintiff and Respondent,

-vs-

STUART STRINGER,

    Defendant and Appellant.

**FILED**

FEB 0 3 1994

_ed Smith_
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John Keith, Attorney at Law, Great Falls, Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General, Jennifer
Anders, Ass't Attorney General, Helena, Montana

        Randy Winner, Ass't City Attorney, Great Falls,
Montana

Submitted on Briefs:  November 18, 1993

Decided:  February 3, 1994

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Eighth Judicial District Court, Cascade County. Appellant Stuart Stringer (Stringer) appeals from the denial of his motions to dismiss on grounds of double jeopardy and on failure of the State of Montana's (State's) witnesses to make an in-court identification of the perpetrator. We affirm.

The issues before this Court are:

1. Did the District Court err in denying Stringer's motion to dismiss on grounds of double jeopardy?

2. Did the District Court err in denying Stringer's motion to dismiss based on the failure of the State's witnesses to make an in-court identification of the perpetrator?

On January 12, 1992, at approximately 3:00 a.m., police officers Paul Smith and Jack Allen responded to a disturbance in Great Falls, Montana. Upon arrival at Stringer's residence, the officers could hear yelling and banging inside. Officer Allen went to the back of the house, while Officer Smith knocked on the front door, which was ajar. No one answered.

Officer Smith saw a woman, later identified as Stringer's wife, Kathy, on the kitchen floor covering her head with her arms. He also heard Stringer, who stood over his wife, yelling he was going to kill her. Officer Smith entered the house and announced himself again. Stringer heard Officer Smith this time. Officer Smith advised Stringer he was under arrest. Stringer--who had been drinking--responded peaceably at first, offering his hands so that he could be handcuffed.

2

Stringer, 37, then became inexplicably violent, physically challenging the arrest. By that time, Officer Allen had returned from the back of the house, entered the front door, and assisted Officer Smith in restraining Stringer. Because Stringer resisted arrest so forcefully, Officer Allen radioed for back-up police support.

Officers Smith and Allen forcibly handcuffed Stringer, who, according to officers, was salivating and acting wildly. During the struggle, Stringer kicked Officer Allen in the head. The officers restrained Stringer until back-up help arrived. Because of Stringer's kicking, the officers bound his legs. The officers then carried Stringer, whose arms were handcuffed behind his back, face down to a police car in front of the house. Stringer resisted continuously. He screamed profanities, threatened to kill the officers, and disturbed neighborhood residents.

Stringer was charged by complaint with two misdemeanors: disorderly conduct, in violation of § 45-8-101(1)(c), MCA, and resisting arrest, in violation of § 45-7-301(1)(a), MCA. After failing to appear on the date scheduled for trial in city court, Stringer was convicted of both charges. Stringer appealed to the District Court on June 19, 1992, whereupon trial was set for November 2, 1992.

The November 2nd trial was vacated on the court's motion due to a jury trial that was in progress. A new trial was set for November 24, 1992. The State and Stringer, who was unrepresented by counsel, appeared on November 24th; however, the State was

3

granted a continuance because Officer Smith, a material witness, was ill. The trial was reset for December 15, 1992; however, Stringer was granted a continuance because he needed to get an attorney. At that time, the court appointed a public defender, and trial was reset for February 10, 1993.

At the February 10th trial, Stringer appeared without counsel. At the outset, the District Court Judge asked Stringer if he was ready to proceed. He replied, "I still don't have a lawyer, sir." Because the trial had already been delayed once to allow Stringer to retain counsel, the Judge determined that the trial should proceed.

After Officer Smith was sworn and testified, the District Court Judge interrupted the proceedings and asked Stringer about a letter in the court file which indicated that John Keith, a public defender for the City of Great Falls, was going to represent Stringer. Stringer responded that he had not contacted Mr. Keith, but that he still wanted a lawyer. The court recessed and unsuccessfully attempted to locate Mr. Keith. The court then vacated the trial to allow Stringer an opportunity to secure counsel.

The trial de novo was finally held on March 19, 1993. At the trial, Stringer was represented by Mr. Keith, who moved to dismiss on the grounds that double jeopardy attached at the February 10th trial. The motion was denied. Mr. Keith later moved to dismiss on the basis that Stringer was never identified by the State's witnesses as the perpetrator. That motion was denied as well.

4

Stringer was convicted on both charges and sentenced to two days in jail. He was ordered to pay a $300 fine for disorderly conduct and a $100 fine for resisting arrest. All but one day of the jail sentence was suspended, and Stringer was given credit for one day of jail time already served. The fines imposed were also suspended on the condition that Stringer obey all laws and perform forty hours of community service. Stringer appeals.

I

Did the District Court err in denying Stringer's motion to dismiss on grounds of double jeopardy?

Stringer argues that double jeopardy attached at the February 10, 1993, trial, after the first witness was sworn. See § 46-11-503(1)(d)(ii), MCA. Section 46-11-503(2), MCA, provides in pertinent part that prosecution of the same transaction as a former prosecution is barred unless:

(a) the defendant consents to the termination or waives his right to object to the termination; or
(b) the trial court finds that the termination is necessary because:

. . .

(ii) there is a legal defect in the proceedings that would make any judgment entered upon a verdict reversible as a matter of law;
(iii) prejudicial conduct makes it impossible to proceed with the trial without manifest injustice to either the defendant or the state;

. . .

In the present case, the District Court based its denial of Stringer's motion to dismiss on this statute. First, the District Court found that Stringer waived his right to object to termination

5

and consented to the discontinuance of the trial when he stated, "Yes, I do want a lawyer." Second, the District Court found that the termination was necessary because there would be a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law. The court based this finding on the "possibility that jail time might be in the sentence if the defendant was found guilty" and that the case would have had built-in error because Stringer was not represented by counsel at the time. The court also found that allowing Stringer to continue without counsel would have resulted in manifest injustice to Stringer.

Stringer contends that the court's findings were clearly erroneous, were unsupported by the record, and resulted from the District Court's failure to promptly determine the propriety of appointing counsel for Stringer. Stringer argues, and the record shows, that Stringer twice expressed his desire to continue without counsel at the February 10th trial.

The waiver rule was designed to prevent defendants from alleging a double jeopardy bar to retrial where they, not the prosecutors, cause the mistrial or are otherwise responsible for terminating the proceedings: "Where the defendant has an active hand in arranging the disposition of the causes so he might benefit from the results, he waives any double jeopardy claims." Boze v. State (Ind. 1987), 514 N.E.2d 275, 277 (citation omitted). Although Stringer did not explicitly request a mistrial or continuance, his request for counsel is what prompted the court to

6

vacate the proceedings. The termination of the proceedings ultimately worked to Stringer's advantage because it allowed him the opportunity to secure Mr. Keith's representation.

The District Court determined that, pursuant to § 46-11-503(2)(b)(ii), MCA, this case would embody built-in reversible error if Stringer were allowed to proceed without counsel. Section 46-8-101, MCA, which governs the right to counsel in criminal trials, provides in pertinent part:

> (2) If the defendant desires counsel, is unable to employ counsel, and is entitled to have counsel assigned, the court shall assign counsel to the defendant without unnecessary delay.
> (3) The defendant, if unable to employ counsel, is entitled to have counsel assigned if:
> (a) the offense charged is a felony;
> (b) the offense charged is a misdemeanor and the court desires to retain imprisonment as a sentencing option; or
> (c) the interests of justice would be served by assignment.

Once the District Court determined that Stringer had properly preserved his right to counsel, the State asserts, it had an affirmative duty under this statute to determine whether Stringer qualified for court-appointed counsel, whether Stringer might be subjected to imprisonment, or whether appointment of counsel was required in the interests of justice. See State v. Skurdal (1988), 235 Mont. 291, 767 P.2d 304. Stringer contends, however, that no legal defect requiring reversal of the judgment would have occurred because the only consequence of the court's failure to appoint counsel in this misdemeanor case would be to limit any jail sentence which could be imposed. See Scott v. Illinois (1979), 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383.

7

Stringer's argument lacks merit. Stringer requested counsel, which triggered the court's obligation to determine whether appointment was required. See § 46-8-101, MCA. Stringer now suggests that the District Court should have: 1) sacrificed its authority to consider whether the gravity of the offense warranted jail time--a result which the court acknowledged was an option in this case; and 2) disregarded Stringer's request for counsel and allowed "the trial [to] proceed to its conclusion despite a legitimate claim of serious prejudicial error." United States v. Dinitz (1975), 424 U.S. 600, 610, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267, 275.

The District Court properly avoided reversible error by terminating the trial when it did. We hold, therefore, that no bar to retrial exists under § 46-11-503(2)(b)(ii), MCA. Because we determine that the court properly avoided reversible error, no further inquiry into the double jeopardy issue is necessary.

II

Did the District Court err in denying Stringer's motion to dismiss based on the failure of the State's witnesses to make an in-court identification of the perpetrator?

At the conclusion of the State's case, Stringer moved for dismissal of the charges because none of the State's witnesses identified Stringer as the perpetrator. The State agrees that the officers who testified during the State's case-in-chief did not specifically identify Stringer as the perpetrator or otherwise physically indicate Stringer's presence in the courtroom.

8

While Stringer could find no Montana case law supporting this argument, he did find where the Wyoming Supreme Court dealt with this issue. See Capwell v. State (Wyo. 1984), 686 P.2d 1148. In Capwell, the court found that the burden of proof on the State to prove all elements of the offense includes identification of the defendant as the perpetrator. Capwell, 686 P.2d at 1157. While an in-court visual identification is not required, there must be some basis for establishing the identity of the defendant as the perpetrator. Capwell, 686 P.2d at 1157.

In Capwell, the court found that the witnesses testified from their personal knowledge of the identity of the defendant. Capwell, 686 P.2d at 1157. In the case before us, Stringer argues that the State's witnesses, the officers, have no personal knowledge of Stringer's identity. Merely calling him by name, Stringer asserts, fails to establish any basis for personal knowledge of Stringer's identity.

The State agrees that the prosecution must prove all elements of the crime charged beyond a reasonable doubt, including the fact that the party charged was the person who committed the offense. See Capwell, 686 P.2d at 1157. However, as the State correctly asserts, Capwell stands for the proposition that the method of identification used in a criminal trial is largely within the discretion of the trial court. See Capwell, 686 P.2d at 1157.

According to the State, there is no requirement that the accused be identified in court as the perpetrator. Rather, it is only necessary that the person committing the crime be identified

9

as the person charged in the information.  See United States v. Capozzi (8th Cir. 1989), 883 F.2d 608, 617.

Courts have held that an in-court identification is not necessary where the evidence is sufficient to permit an inference that the defendant on trial is the person who committed the offense.  United States v. Morrow (4th Cir. 1991), 925 F.2d 779, 781; Price v. State (Ga. Ct. App. 1986), 348 S.E.2d 740, 742.  In fact, a state can satisfy its burden of proving identity through circumstantial evidence.  State v. Mecum (Neb. 1987), 404 N.W.2d 431; Creech v. State (Tex. Ct. App. 1986), 718 S.W.2d 89.

Although there was no in-court identification of Stringer, the District Court could have drawn the inference from the evidence presented that Stringer was the perpetrator.  When responding to the State's question regarding the identity of the suspect, Officer Smith testified that the person was "[l]ater identified as Stuart Stringer."  Furthermore, all the officers referred to the perpetrator as "Mr. Stringer."

At no time during the trail was there any question of misidentification.  Stringer took the stand and gave his own version of the events which were previously described by the police officers.  Stringer's brother, wife and daughter also testified on Stringer's behalf.  Nothing in their testimony raises any question that the perpetrator was someone other than Stringer.

No basis exists to reverse the District Court's ruling denying Stringer's motion to dismiss for failure to identify him as the perpetrator.  The District Court was entitled to infer Stringer's

10

identity and--in light of the record--correctly determined that Stringer was, in fact, the perpetrator.

Affirmed.

_John Conway Harrison_
Justice

We concur:

_Karla M. Gray_

_Jim Rice_

_William E. Hunt_

_Jim_
Justices