2007 WY 187

**Fredrick Charles WILKENING, Petitioner/Appellant,**

v.

**The STATE of Wyoming, Respondent/Appellee.**

No. 06–109.

Supreme Court of Wyoming.

Nov. 30, 2007.

Representing Petitioner: D. Terry Rogers, Interim Public Defender; Tina N. Kerin, Appellate Counsel. Argument by Ms. Kerin.

Representing Respondent: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric Alan Johnson, Director, Prosecution Assistance Program; Geoffrey Gunnerson, Student Director, Prosecution Assistance Program; Kevin Kessner, Student Intern, Prosecution Assistance Program. Argument by Mr. Kessner.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] We previously upheld Fredrick Wilkening's conviction for felony interference

with a peace officer. *Wilkening v. State,* 2005 WY 127, 120 P.3d 680 (Wyo.2005). While that appeal was pending, Mr. Wilkening filed a motion for new trial in the district court, claiming that the State had improperly withheld exculpatory evidence. The district court denied the motion, leading to Mr. Wilkening's current challenge. We will affirm the district court's decision to deny Mr. Wilkening a new trial.

## ISSUE

[¶ 2] Mr. Wilkening presents this issue:

Did the trial court err in denying the motion for new trial, in which it was alleged that the State had withheld potentially exculpatory evidence?

## FACTS

[¶ 3] We begin with a brief summary of the facts from our previous opinion in this case. When two Sweetwater County deputy sheriffs arrested Mr. Wilkening, he struggled and attempted to stab one of the deputies with a screwdriver. That deputy suffered cuts to the fingers and knuckles of his left hand, and a puncture wound to the thumb of his right hand. *Id.,* ¶¶ 3–7, 120 P.3d at 682–83. Charged with felony interference with a police officer, Mr. Wilkening's main defense at trial was that the deputies were not engaged in the lawful performance of their duties when the altercation occurred. Mr. Wilkening asserted that the deputies had a grudge against him, and arrested him on specious grounds. His struggle was justified, he claimed, because his arrest was improper. This defense was unsuccessful, however, and Mr. Wilkening was convicted of the crime charged.

[¶ 4] While working on Mr. Wilkening's previous appeal, his appellate counsel had a conversation with a former prosecutor. According to appellate counsel, the former prosecutor related that he had filed the Information against Mr. Wilkening, but then

refused to prosecute the case because the deputy involved had stopped by his office before heading out to Mr. Wilkening's property and the deputy said he was "going to kick some ass." [The former prose-

cutor] further stated, "As far as I was concerned [the deputy] was looking for a fight and got one."

Asserting that this new information would have provided material support for his defense theory, Mr. Wilkening moved for a new trial on the basis that the prosecution had improperly suppressed exculpatory evidence.

[¶ 5] At the hearing on Mr. Wilkening's motion for a new trial, both of the deputies were subpoenaed, but neither was called to testify. In his testimony, the former prosecutor denied that either of the deputies made the alleged statement. Following the former prosecutor's testimony, appellate counsel testified to her recollection of the conversation with the former prosecutor. At the close of the hearing, the district court denied the motion for new trial.

## STANDARD OF REVIEW

[¶ 6] Mr. Wilkening claims that his constitutional rights were denied when the prosecution withheld exculpatory evidence. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Davis v. State,* 2002 WY 88, 47 P.3d 981 (Wyo.2002). When considering constitutional issues, this Court generally applies a *de novo* standard of review. *Martinez v. State,* 2006 WY 20, ¶ 6, 128 P.3d 652, 656 (Wyo.2006). *See also Potter v. State,* 2007 WY 83, ¶ 14, 158 P.3d 656, 660 (Wyo.2007) (speedy trial); *Garcia v. State,* 2007 WY 48, ¶ 7, 153 P.3d 941, 943 (Wyo.2007) (illegal sentence); and *Stokes v. State,* 2006 WY 134, ¶ 6, 144 P.3d 421, 423 (Wyo.2006) (constitutionality of criminal statute). The parties agree that Mr. Wilkening's claim of failure to disclose evidence in violation of *Brady* is properly reviewed *de novo.* *See Thomas v. State,* 2006 WY 34, ¶ 11, 131 P.3d 348, 352 (Wyo.2006); *Chauncey v. State,* 2006 WY 18, ¶ 13, 127 P.3d 18, 21 (Wyo.2006).

## DISCUSSION

[¶ 7] In *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punish-

ment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation, Mr. Wilkening must prove, first, that the prosecution suppressed evidence, second, that the evidence was favorable to the defense, and third, that the evidence was material because it is reasonably probable that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Davis*, ¶ 16, 47 P.3d at 985. Notably, the burden is on Mr. Wilkening to establish all three elements. *Mascarenas v. State*, 2003 WY 124, ¶ 18, 76 P.3d 1258, 1265 (Wyo.2003).

■ [¶ 8] To analyze this case, it is necessary to identify precisely what evidence it is that, in Mr. Wilkening's view, justifies a new trial. It cannot be the statement of the former prosecutor to appellate counsel. That statement did not exist at the time of the trial, and so could not have been improperly suppressed. Rather, the evidence directly at issue is the deputy's alleged statement to the former prosecutor that he was going to Mr. Wilkening's property "to kick some ass." If the deputy made that statement before arresting Mr. Wilkening, then the evidence would have existed at the time of the trial. It was not disclosed to Mr. Wilkening before trial. It would have been favorable to his defense theory that the deputies were acting on some sort of personal grudge, not pursuant to official duties. It might have changed the jury's decision, because even if the deputies denied saying they had been looking for a fight, the evidence might have been used as effective impeachment. "Impeachment evidence that could be used to discredit such an important witness ... is usually material." *Davis*, ¶ 22, 47 P.3d at 987. *See also United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490 (1985).

■ [¶ 9] Based on our *de novo* review, however, we conclude that Mr. Wilkening did not meet his burden of proving that the deputy made the statement as alleged. The two deputies were present at the hearing, but for reasons not apparent from the record, were never called as witnesses. Their silence provides no support for Mr. Wilkening's claim. *See Mascarenas*, ¶ 18, 76 P.3d at 1265 (*Brady* claim "must fail" when the disputed evidence is not included in the record).

[¶ 10] The former prosecutor testified at the hearing. Asked if the deputy ever said that he was going "to get into a physical confrontation with Mr. Wilkening," his answer was, simply, "No." He recalled having a conversation with one of the deputies before they arrested Mr. Wilkening, but could not remember specifics, including which of the two deputies had been involved in the conversation. The former prosecutor then testified as follows:

Q. Did you at any time tell [appellate counsel] that you did not want to prosecute the matter because you felt that the officers in this matter were looking for a fight and got one?

A. I said that to [appellate counsel], but she took that out of context.

Q. Okay. Could you explain that to the Court.

A. Yeah. I had a policy ... that if somebody started a fight and lost the fight, they're not going to come to me and have me finish the fight for them. Basically, if there's any element of self-defense, then I was not going to file the charges. And I had initial reason to at least look at this matter and determine whether or not maybe the officer had something to do with starting the fight, so to speak. And I determined very quickly he did not.

Q. Once again I'm going to take another shot at this. Did the officer—either of the officers say anything to you that would indicate, though, that they intended to get into a physical altercation with Mr. Wilkening?

* * *

A. The correct answer is no, no intent.

In sum, the former prosecutor's testimony was contrary to Mr. Wilkening's claim that the deputy made the statement as alleged.

[¶ 11] Appellate counsel testified about what the former prosecutor had said about the deputy's statement. At most, however, her testimony may have established what the former prosecutor said. The former prosecutor's statement is not the evidence at issue. The evidence directly at issue is the deputy's

alleged statement, and on that point, appellate counsel provided only minimal support for Mr. Wilkening's claim.

[¶ 12]   Mr. Wilkening bears the burden of proving that the evidence existed but was suppressed.  *See Chauncey*, ¶ 17, 127 P.3d at 22–23; *Gale v. State*, 792 P.2d 570, 586 (Wyo. 1990).   On this record, we conclude that he did not carry that burden.   Having failed to prove the first element of his *Brady* claim, Mr. Wilkening's challenge cannot succeed. We therefore affirm the decision of the district court denying Mr. Wilkening's motion for a new trial.