2008 WY 56

**Jonmichael GUY, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 06–151.**

Supreme Court of Wyoming.

May 22, 2008.

Rehearing Denied June 19, 2008.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General. Argument by Mr. Causey.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶1] Jonmichael Guy seeks to overturn his conviction for attempted second-degree murder. He asserts numerous claims of error. Finding no prejudicial error, we affirm.

### ISSUES

[¶2] Mr. Guy presents the following issues. Slightly reworded, they are:

1. Did prosecutorial misconduct deprive Mr. Guy of his constitutional right to a fair trial?

2. Did Mr. Guy receive ineffective assistance of trial counsel?

3. Was there sufficient evidence to sustain Mr. Guy's conviction?

4. Did the district court allow excessive security in the courtroom?

5. Are Wyo. Stat. Ann. §§ 6–1–301, attempt, and 6–2–104, murder in the sec-

ond degree, unconstitutional as applied to Mr. Guy?

6. Does cumulative error exist, warranting reversal?

## FACTS

[¶ 3] On the evening of December 4, 2004, Jacob Riske visited several Laramie bars with his friends, Cody Schuelke, and Joseph and Amanda Faycosh. Sometime near midnight, the group left a bar called the "Ice Haus." The four individuals then began to walk toward Elmer Lovejoy's, a restaurant-bar only a few blocks west. As Mr. Riske and his friends reached the halfway point of the first full block of their walk, they observed a black Chevrolet Camaro pull partway into the alley just behind them. Mr. Guy exited the vehicle and verbally accosted a group of people walking near Mr. Riske and his friends. Mr. Guy yelled at the group. He used profanity and confrontational language, was aggressive in his demeanor, and generally acted in a manner likely to result in a physical altercation. Stephen Schwartz was the Camaro's driver. While he also exited the car, his behavior was not belligerent. Mr. Riske and those in his party did not know anyone in the group Mr. Guy was accosting, but nevertheless stopped and helped persuade Mr. Guy and Mr. Schwartz to return to the vehicle and leave. They did so without a physical confrontation.

[¶ 4] The Camaro did not go very far, however. It was stopped at the next intersection as Mr. Riske's group crossed. They had to pass the Camaro, which was partially obstructing the crosswalk, and Mr. Schuelke testified that he "rubbed [his] hand across the spoiler of the car just in case they did start backing up." After Mr. Riske's group reached the corner, the Camaro turned sharply into their path and stopped, blocking the other crosswalk at that corner. Joseph and Amanda Faycosh went around the Camaro to cross the street, followed closely by Mr. Schuelke. Mr. Riske was still on the corner when Mr. Guy exited the Camaro and confronted him. Mr. Riske tried to calm Mr. Guy. Mr. Schwartz exited the vehicle as well, but again did not join in Mr. Guy's confrontational behavior. Mr. Schuelke returned to

assist Mr. Riske. At some point, Mr. Schuelke pinned Mr. Guy against a building or a nearby pole and urged him to leave. He then released Mr. Guy, who returned to the Camaro via a route that led behind Mr. Riske. At this time, Mr. Riske felt a "bump" or "sucker punch" to his back. He testified that Mr. Guy was the only person within range to have delivered the blow. Mr. Guy or Mr. Schwartz then yelled something to the effect of, "Let's go!" or "Let's get out of here!" and the two men ran to the Camaro and drove away at a high speed.

[¶ 5] Mr. Riske and Mr. Schuelke rejoined the Faycoshes, and they continued down the street. In short order, however, someone in the group observed blood on Mr. Riske's back and determined that he was bleeding significantly. Mr. Riske sat in a nearby doorway, and the others flagged down a police officer. Mr. Riske was taken to the hospital, where he was treated for a stab wound. Against medical advice, he chose to leave the hospital that night. He returned to the hospital the next day, however, and doctors determined that he had suffered a perforated liver from the stabbing.

[¶ 6] Mr. Guy was arrested at his home several hours after the attack. He was charged with attempted second-degree murder in violation of Wyo. Stat. Ann. §§ 6–1–301(a)(i) and 6–2–104 (LexisNexis 2007). At trial, Mr. Riske, Mr. Schuelke, and the Faycoshes testified with minor variation to the version of facts set out above. None of them testified that they observed the stabbing. Mr. Schwartz was also called as a witness for the State. He testified that he and Mr. Guy were together that night, identified the Camaro as his, and testified that Mr. Guy had carried a knife in the past, but had lost it prior to the night of the stabbing. Evidence introduced by the State established that the attack occurred within a few minutes of midnight.

[¶ 7] In his defense case, Mr. Guy presented several witnesses. His first witness, Joseph Nichols, testified that he was at the scene of the second altercation, and that the confrontation between Mr. Guy and Mr. Riske was mutual. He also testified that he did not observe the stabbing. Joseph Pitch-

ford was also called to testify by Mr. Guy. Mr. Pitchford testified that he had come upon the fight after he had left the Ice Haus bar at 2:00 a.m., and that the altercation was mutual. He did not testify regarding whether he saw the stabbing, but did state that he did not observe a knife in Mr. Guy's possession. Mr. Guy did not testify.

[¶ 8] The jury returned a guilty verdict and Mr. Guy was sentenced to 30–45 years in the state penitentiary. He then initiated this appeal. While his appeal was pending, Mr. Guy filed a motion with this Court seeking a limited remand to develop evidence of ineffective assistance of trial counsel pursuant to our decision in *Calene v. State*, 846 P.2d 679 (Wyo.1993). We granted the motion, and the district court held an evidentiary hearing. The district court determined that Mr. Guy had failed to prove that he had received ineffective assistance from trial counsel. This appeal then proceeded to briefing and argument.

### DISCUSSION

**Prosecutorial Misconduct**

[¶ 9] Mr. Guy alleges numerous instances of prosecutorial misconduct. With one exception, discussed below, defense counsel did not object to any of the prosecution statements that Mr. Guy now alleges were improper. Absent an objection, we review for plain error. *Talley v. State*, 2007 WY 37, ¶ 9, 153 P.3d 256, 260 (Wyo.2007). "Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Id.* We do not reverse the judgment "unless a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict." *Mazurek v. State*, 10 P.3d 531, 542 (Wyo.2000) (quoting *English v. State*, 982 P.2d 139, 143 (Wyo.1999)).

[¶ 10] We review allegations of prosecutorial misconduct in light of the entire

record. *Talley*, ¶ 9, 153 P.3d at 260. In this case, all of Mr. Guy's claims of prosecutorial misconduct that we address occurred during closing arguments. Where the purported misconduct was a part of a closing argument, we also consider it in the context of the argument as a whole. *Id.* Furthermore, we are generally "reluctant to find plain error in closing arguments lest 'the trial court become[ ] charged with an adversary responsibility to control argument even when objection is not taken by the opposing attorney.' " *Sanderson v. State*, 2007 WY 127, ¶ 37, 165 P.3d 83, 93 (Wyo.2007) (quoting *Farmer v. State*, 2005 WY 162, ¶ 26, 124 P.3d 699, 709 (Wyo.2005)).

*Comment on Right to Silence*

[¶ 11] Mr. Guy claims two prosecution statements constituted improper comment on his right to remain silent as guaranteed by the Fifth Amendment to the United States Constitution.[1] We have previously stated that "direct prosecutorial comment upon a defendant's exercise of his right to silence will entitle the defendant to reversal." *Emerson v. State*, 988 P.2d 518, 521 (Wyo.1999). But we have also recognized that "a mere reference to his silence will not require reversal absent a showing of prejudice to the defendant." *Id.* In evaluating whether a comment is an indirect reference to the defendant's silence, we have stated:

> "the test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.... It is not improper for the government to draw attention to the failure or lack of evidence on a point if it is not intended to call attention to the failure of the defendant to testify."

*Oldham v. State*, 534 P.2d 107, 112 (Wyo. 1975) (quoting *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir.1955)).

[¶ 12] The first statement that Mr. Guy claims is error is the emphasized portion

---

1. The Fifth Amendment states, in relevant part, that "No person ... shall be compelled in any    criminal case to be a witness against himself."

of the following excerpt from the State's closing argument:

> [Y]ou've already been told by the judge the law says that you can infer the existence of malice and an attempt to kill. Why do we tell you that? Because we're not mind readers. And we rarely have the luxury of bringing you cases where everything was on video tape. *After it happened, everybody sat down, including the perpetrators, confessed, told us what they were thinking clearly, enunciated their intent, and elaborated on what they hoped had happened.* It hasn't happened to me yet. I have been doing this long enough to know that if it was going to happen, I think I would know about it. So we get back to inference.

(Emphasis added.)

[¶ 13] Mr. Guy asserts that there was no legitimate basis for the prosecutor's argument "other than to impermissibly comment on the fact that [he] never 'confessed' or testified, to explain his 'intent' to the jury." He also claims that it "can also be easily construed as improper vouching for the strength of the prosecution case; that is, that this case has occurred like cases are expected to in the prosecutor's experience." We disagree with Mr. Guy's characterization of the prosecutor's statement. It is neither a direct nor indirect comment on Mr. Guy's exercise of his constitutional right to remain silent. Rather, we perceive that the prosecutor intended to explain to the jury that Mr. Guy's state of mind can be inferred from the surrounding circumstances. This argument is permissible. *Davis v. State,* 2005 WY 93, ¶ 40, 117 P.3d 454, 469–70 (Wyo.2005).

[¶ 14] The second statement Mr. Guy claims infringes upon his right to remain silent is the following, also taken from the State's closing argument:

> I ask you again what—it's not their burden, but we've presented a case to you that makes sense and everybody's testimony corresponds. *What evidence has the defendant presented to you to refute that? Pitchford* [a defense witness]. *That's really it.* That surprise witness is really a nothing. Pitchford. What does that help you with? How does that in any way make you think that these other witnesses didn't tell you exactly what happened?

(Emphasis added.) Mr. Guy claims that "implying that [he] should have 'refuted' the prosecution case highlighted, improperly, [his] exercise of his right to silence." We disagree. It is generally "not error for the prosecutor to argue that [the State's] evidence is uncontradicted or that the evidence does not support the defendant's theory of the case." *Belden v. State,* 2003 WY 89, ¶ 48, 73 P.3d 1041, 1089 (Wyo.2003).

[¶ 15] Mr. Guy relies heavily upon *United States v. Cotnam,* 88 F.3d 487 (7th Cir.1996) to support his position. His reliance is misplaced. In *Cotnam,* the court held that reference to the prosecution's evidence as "undisputed" is "a violation of the defendant's Fifth Amendment rights if the only person who could have contradicted, denied, rebutted or disputed the government's evidence was the defendant himself." 88 F.3d at 497. In *Cotnam,* a police officer testified regarding a conversation that he had with one of the defendants, Mr. Zadurski. *Id.* at 499. The officer testified that he and Mr. Zadurski tried to keep their conversations private. The court found it important "that, at least for some of these discussions, only Zadurski himself could have refuted [the officer's] version of what was said." *Id.* The court held in *Cotnam* that reference to evidence as "uncontradicted" is misconduct when "the *only person* who could have contradicted ... the government's evidence was the defendant himself." *Id.* at 497 (emphasis added).

[¶ 16] The private conversations in *Cotnam* are distinguishable from the events presented here. Mr. Guy might have contradicted the eyewitness testimony had he testified, but he was not the only person who could have done so. Several individuals witnessed the confrontation involving Mr. Riske and Mr. Guy. Indeed, Mr. Guy called two witnesses—Mr. Pitchford and Mr. Nichols—who both contradicted portions of the State's version of events. *Cotnam* is simply not applicable to the facts presented here. Mr. Guy has failed to demonstrate a violation of a clear and unequivocal rule of law, and consequently, has failed to establish plain error.

*Prosecutorial Misstatements in Closing Argument*

[¶ 17] Mr. Guy asserts that the prosecutor intentionally misstated the facts on several occasions during closing argument. He takes issue with the following statements made by the prosecutor during closing argument:

1. "All of the witnesses told you that when this happened, [Mr. Guy] ran behind [Mr. Riske], stabbed him, and jumped in the car and took off."

2. "And every witness that has identified the perpetrator of this crime has pointed to and, under oath, identified the defendant as the person that committed this, not anybody else."

3. "The officers who dealt with [the witnesses] also told you they weren't drunk."

4. "And the officers have certainly established that they contacted every person they could identify and did their level best to get as much information out of them as they could."

5. "The doctor told you that happens a lot: People get stabbed and don't know they have been stabbed, that maybe somebody punched them in the back."

[¶ 18] Mr. Guy concedes that no objection was made at trial to any of the alleged misstatements and that we must review for plain error. Under a plain error analysis, Mr. Guy is required to establish that he was prejudiced by the alleged misstatements. He has failed to meet that burden.

[¶ 19] In his brief, Mr. Guy states that it would be easy for the jury to become confused. He also claims that, because the jury asked for a trial transcript almost immediately after beginning deliberations, "it is a reasonable inference that the jury was confused as to some point." While the jury's request may signify confusion about some point, Mr. Guy has failed to demonstrate that the request related in any fashion to the statements he challenges here. Furthermore, the jury in this case was instructed by the district court that the arguments of counsel are not evidence. We presume that the jury followed those instructions. *Kennedy v.*

*State,* 559 P.2d 1014, 1018 (Wyo.1977). Mr. Guy has failed to demonstrate any prejudice from the prosecutor's comments, and has failed to establish plain error.

*Improper Vouching*

[¶ 20] Mr. Guy asserts that the prosecutor improperly vouched for the veracity of the law enforcement officers and the quality of their investigation. Defense counsel, in his closing argument, criticized law enforcement officers' conduct. In response, the prosecutor stated the following:

And the first thing I have to do is, make it very clear I stand behind Sergeant Brown and the investigation that was conducted in this matter.

Mr. Guy's trial counsel objected to this statement, and the district court sustained the objection. Although the prosecutor's comment was apparently in response to defense counsel's closing argument, the prosecutor went too far, and his remarks were error.

[¶ 21] The prosecutor's comment at Mr. Guy's trial closely resembles the prosecutor's statement in *Dysthe v. State* regarding the quality of the investigation in that case. 2003 WY 20, ¶ 28, 63 P.3d 875, 886 (Wyo. 2003). In *Dysthe*, the prosecutor, also in response to defense argument, "stated that he worked with the investigators on the case and he could 'guarantee' that their investigations were not 'arbitrary.' " *Id.* We found the statement to be improper. The risk in allowing such arguments is that counsel may be viewed as "an authority whose opinion carries greater weight than" that of the jury. *Id.,* ¶ 29, 63 P.3d at 886 (quoting *Barela v. State,* 787 P.2d 82, 83 (Wyo.1990)).

[¶ 22] In order to justify reversal of his conviction, however, Mr. Guy must also establish that the prosecutor's statement impacted his substantial rights. *Earll v. State,* 2001 WY 66, ¶ 9, 29 P.3d 787, 789 (Wyo.2001). A defendant's substantial rights have been affected when, absent the misconduct, there is a reasonable possibility that the verdict might have been more favorable to the defendant. *See id.* In *Dysthe*, the improper vouching regarding the quality of the investigation was merely one of several incidents of

improper vouching. ¶ 28, 63 P.3d at 886. The prosecutor also improperly vouched for the credibility of several of its witnesses. Those comments were also improper. " 'It is improper for the prosecuting attorney, even in responding to defense arguments, to personally vouch for . . . the state's witnesses.' " *Id.,* ¶ 29, 63 P.3d at 886 (quoting *Lane v. State,* 12 P.3d 1057, 1065 (Wyo.2000)). We determined that reversal was warranted because "the State's case depended entirely on the jury finding its witnesses credible." *Dysthe,* ¶ 31, 63 P.3d at 886. In contrast, the State's case against Mr. Guy did not depend upon the quality of the investigation or the credibility of the officers' testimony. The State did not call any of the investigating officers as witnesses during the presentation of its case. It was Mr. Guy, not the State, who called the four officers as witnesses. The State called only one officer as a rebuttal witness.

[¶ 23] Mr. Guy has not detailed the relevance of the police investigation to the disputed issues at trial. The quality of the police investigation was, at most, a minor issue. There was no dispute that Mr. Riske was stabbed and that Mr. Guy had a confrontation with Mr. Riske. There was some dispute about the precise nature of that confrontation, but the testimony regarding the incident came from eyewitnesses, not the investigating officers. We do not view the prosecutor's improper comment to be significant in light of eyewitness testimony regarding the incident. We find no prejudice to Mr. Guy as a result of the prosecutor's improper comment. There is no reasonable possibility that, absent the prosecutor's improper statement, the verdict would have been more favorable to Mr. Guy.

**Ineffective Assistance of Counsel**

[¶ 24] Mr. Guy alleges that he did not receive effective assistance of trial counsel. Pursuant to the framework set out in *Calene v. State,* 846 P.2d 679, 692 (Wyo. 1993), we remanded this case for an evidentiary hearing in the district court. After conducting the hearing, the district court issued a detailed opinion letter setting forth its factual findings. The court determined that

Mr. Guy was not denied effective assistance of counsel. Mr. Guy challenges that decision. We accept the district court's findings of fact unless they are clearly erroneous. *Robinson v. State,* 2003 WY 32, ¶ 14, 64 P.3d 743, 747 (Wyo.2003). We review the district court's conclusions of law *de novo. Id.*

[¶ 25] When reviewing claims of ineffective assistance of counsel, the first question is whether trial counsel's performance was outside the wide range of professionally competent assistance. *Gleason v. State,* 2002 WY 161, ¶ 44, 57 P.3d 332, 346–47 (Wyo.2002).

An appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Ordinarily, he must also demonstrate that prejudice resulted. Under this test, the inquiry is whether or not counsel rendered the assistance a reasonably competent attorney would have offered and, if not, whether his failure to do so prejudiced the defense of the case. *Id.*
. . .
We examine the conduct of defense counsel in light of all the circumstances in determining whether the identified acts or omissions fall outside the ambit of professionally competent assistance, bearing in mind the function of counsel is to make the adversarial testing process work in every case. *Dickeson v. State,* 843 P.2d 606, 609 (Wyo.1992). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Gleason,* 2002 WY 161, 57 P.3d 332. We do not evaluate the efforts of counsel from a perspective of hindsight but endeavor to reconstruct the circumstances surrounding the challenged conduct and evaluate the professional efforts from the perspective of counsel at the time. *Dickeson,* 843 P.2d at 609. We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judg-

ment. *Id.* The burden is on the defendant to overcome this presumption that, in light of the circumstances, the challenged action or failure of the attorney might be considered sound trial strategy. *Id.*

*Floyd v. State,* 2006 WY 135, ¶ 12, 144 P.3d 1233, 1235 (Wyo.2006) (quoting *Leyva v. State,* 2005 WY 22, ¶ 19, 106 P.3d 873, 878 (Wyo.2005)).

### Mr. Guy's Decision Not to Testify

[¶ 26] Mr. Guy's first claim of ineffective assistance of counsel is that his trial attorney provided incorrect advice that resulted in his decision not to testify at his trial. Specifically, Mr. Guy asserts that defense counsel incorrectly advised him that there was a risk that aspects of his prior criminal history would be admissible as evidence if he testified. Mr. Guy's prior criminal history included several juvenile offenses and three adult misdemeanors. One of the misdemeanors was for domestic violence and apparently Mr. Guy may have violated his probation resulting from that conviction when he moved to Wyoming from California. Defense counsel testified at the *Calene* hearing that:

> [Mr. Guy] ... absconded from probation from California, and—and it was a violent crime, although I'm pretty sure it was a misdemeanor. I was afraid that somehow we would either open the door or somehow that would come in if Mr. Guy testified. ... I know it was a misdemeanor and not a felony, but ... it is just so dangerous when the defendant takes the stand, and you can never completely control how that's going to work. ... [I]f he would have testified that he [had] only been here in Laramie a short period of time, that then could have come out why he came here, and it could have been fair game just to the fact that he had abscond[ed] from probation in California. And, further, I was afraid that it could have come out that it was from a violent crime.

[¶ 27] Mr. Guy contends on appeal that there was no risk of admission of evidence relating to the domestic violence conviction and probation violation. We are unable to

make that leap and instead agree with the district court's analysis:

> It takes no stretch of the imagination to visualize a scenario whereby Guy may have opened the door to this evidence, which certainly would have been harmful to his credibility and his case. It is well known that good defense attorneys cautiously approach any case where a defendant insists upon testifying in light of the potential pitfalls that always accompany such testimony. This Court cannot fault [defense counsel] in his conservative approach in this case.
>
> And, ultimately, it was Guy's decision whether or not to testify. He was advised of as much by both [defense counsel] and this Court. Whether this Court would have permitted such evidence, particularly depending upon Guy's statements at trial, is something no one can ever know with certainty. But, the fact exists that it was a very real, and very damaging, possibility.

We are unable to find that defense counsel's advice was unreasonable.

### Mr. Guy's Lost Knife

[¶ 28] Mr. Guy next contends that trial counsel was ineffective because he allowed two witnesses called by the State to testify that Mr. Guy routinely carried a black-handled, four inch, clip-style, folding knife. Defense counsel did not object to the testimony but elicited testimony from both witnesses that Mr. Guy had lost the knife approximately one week prior to the attack. On appeal, Mr. Guy contends that testimony concerning his knife is irrelevant because law enforcement never found the knife used in the attack and both witnesses testified on cross examination that Mr. Guy had lost his knife prior to the attack. Although couched as an ineffectiveness of counsel claim, it seems more appropriately brought as a plain error evidentiary challenge. Regardless of how it is presented, the argument fails because the evidence was relevant.

[¶ 29] " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more ... or less probable than it would be without the

evidence." W.R.E. 401. While the specific knife used in the attack was never located or identified, the fact that Mr. Guy customarily carried a knife of a size consistent with Mr. Riske's injury is unquestionably relevant. Mr. Guy seems to tacitly concede this point when he argues that admission of this testimony was prejudicial. The fact that Mr. Guy had lost a particular knife one week previously did not eliminate the possibility that he was in possession of a similar knife at the time of the attack.

[¶ 30] Mr. Guy also claims that defense counsel should have called Kelly Gorham to testify on his behalf. Mr. Guy testified at the *Calene* hearing that he was with Mr. Gorham when he lost his knife, and Mr. Gorham helped him look for it. Also at the *Calene* hearing, trial counsel explained his decision not to call Mr. Gorham as a witness: "I didn't see me being able to establish that Jon Guy couldn't have had a knife that evening, because he'd lost a knife in the past. I really didn't see how that would effectively prove anything to our benefit at trial." Counsel thus believed that calling Mr. Gorham would serve no useful purpose. In light of our previous discussion, we can find no fault with the decision of defense counsel to not call Mr. Gorham as a witness.

*Officer Norman*

[¶ 31] Mr. Guy next claims that his trial counsel was ineffective because counsel did not call Officer Norman as a witness. Officer Norman was in training with the Laramie Police Department at the time of the stabbing, and was riding on patrol that night with Officer Jacobsen, one of the investigators in the case. When Mr. Riske was at the hospital, Officer Norman obtained a statement from Mr. Riske and wrote a report based on that statement. In relevant part, the report contained the following:

> Riske told me, as these two individuals [Guy and Schwartz] passed, he may have felt the bump from one of them but was unsure which of these individuals it had come from. It should be noted that earlier while I was speaking with Riske, he told me that he had felt nothing at all.

(Paragraph break omitted.) At trial, Mr. Riske testified that Mr. Guy was "within arm's length" when he felt the blow to his back. Mr. Riske also testified that it was not possible for Mr. Schwartz to have reached him, and that Mr. Guy was the only person within range. At the *Calene* hearing, Mr. Guy's trial counsel testified that he could not remember a specific reason that he did not call Officer Norman to testify. He did, however, speculate that he might have been unsure that Officer Norman, as a police officer, would be helpful to Mr. Guy's case. Mr. Guy claims that "[l]acking any strategic reason for not calling Officer Norman, defense counsel was prejudicially ineffective for not calling Officer Norman to testify." Had Officer Norman testified, Mr. Guy asserts, his testimony "would have interrupted the chain of inferences the jury used to convict [him]."

[¶ 32] Mr. Guy contends that Officer Norman's testimony would have effectively impeached Mr. Riske's testimony. He did not, however, call Officer Norman as a witness at the *Calene* hearing. Without Officer Norman's testimony, we are left to speculate regarding what his testimony would have been. *See, e.g., Wilkening v. State,* 2007 WY 187, ¶¶ 9–12, 172 P.3d 385, 387–88 (Wyo.2007) (failure to call officers as witnesses during remand hearing fatal to appellate challenge based on *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)).

[¶ 33] Perhaps more significantly, the record shows that defense counsel used Officer Norman's report to impeach Mr. Riske. During cross-examination, defense counsel confronted Mr. Riske with the statements contained in the report. Mr. Riske did not deny making the statements. He testified that he could not recall making the statements, but admitted that it was possible that he did so. Furthermore, defense counsel called Officer Jacobsen as a trial witness. He testified specifically that Mr. Riske "wasn't sure which person [the 'bump'] came from, but that he might have felt a bump at that time." Defense counsel then asked, "But he was very clear that he wasn't sure which of the two individuals the bump came from, correct?" Officer Jacobsen replied, "That is correct." In summary, at trial, defense counsel established the statement re-

flected in the report through Mr. Riske's admission and Officer Jacobsen's testimony. Officer Norman did not testify at the *Calene* hearing, and we have no record detailing any testimony he would have provided at trial. Mr. Guy has failed to establish that his trial counsel was ineffective because he did not call Officer Norman as a witness at trial.

*Violation of Sequestration Order*

[¶ 34] Mr. Guy next claims that trial counsel's actions prevented the defense investigator from testifying. At the beginning of trial, the district court entered a witness sequestration order. During trial, defense counsel called Joseph Pitchford as a witness. Mr. Pitchford testified that he left the Ice Haus bar and came upon what appeared to be an altercation at the corner of Grand Avenue and Second Street. He testified that he separated Mr. Guy and Mr. Schwartz from Mr. Riske. He observed them until they got into their car and left. The only mention of a knife or stabbing in Mr. Pitchford's testimony was his statement that he never saw a knife in Mr. Guy's hand. Significantly, he also testified that this incident occurred at approximately 2:00 a.m. He bolstered his testimony regarding the time of the incident by stating that it occurred when he left the Ice Haus bar when it closed at 2:00 a.m.

[¶ 35] Later at trial, defense counsel attempted to call Roy Holiday as a witness. Mr. Holiday was the defense investigator, and had been present in the courtroom throughout the trial. Before Mr. Holiday could testify, the district court reminded defense counsel of the sequestration order and pointed out that Mr. Holiday had been present throughout the trial. As a result, the district court prohibited Mr. Holiday from testifying. At the *Calene* hearing, Mr. Holiday testified that, if allowed to testify at trial, he would have described his interview with Mr. Pitchford. Mr. Holiday asserted that Mr. Pitchford claimed in the interview that he left the Ice Haus bar at 10:00 p.m., not at 2:00 a.m. as Mr. Pitchford testified.

[¶ 36] The district court rejected Mr. Guy's claim of ineffective assistance of counsel after the *Calene* hearing, stating:

Assuming for the moment that [defense counsel]'s performance was somehow deficient in allowing Holiday to remain in the courtroom (which this Court does not here find), the question then becomes whether Guy was somehow prejudiced by the fact that Holiday was subsequently prevented from testifying. Clearly, he was not. Holiday's testimony indicates that the "best" outcome that could have occurred had Holiday been permitted to testify was to demonstrate that Pitchford was either mistaken in *both* his earlier statements and trial testimony (thus rendering his testimony even less effective) or, worse yet, that he was a liar both during his trial testimony and in his earlier interviews with Holiday. Pitchford had explained his version of events as having occurred either at 10:00 PM (to Holiday) or at 2:00 AM (to the jury), but, in either case, hospital and police records clearly show that he was flatly wrong. The Court simply cannot fathom any prejudice to Guy in [defense counsel]'s inability to present this witness.

We agree with the district court.

**Sufficiency of the Evidence**

[¶ 37] Mr. Guy next claims that there was insufficient evidence at trial to support his conviction. When we review a criminal conviction for sufficiency of the evidence, we view the facts in the light most favorable to the State. *Downs v. State*, 581 P.2d 610, 614 (Wyo.1978). We leave out any conflicting evidence of the defendant, and draw every reasonable inference in the State's favor. *Id.* The question we must answer is whether a reasonable and rational jury could have convicted the defendant of the crime based upon the evidence that was presented at trial. *Horn v. State*, 554 P.2d 1141, 1145 (Wyo.1976).

[¶ 38] A conviction for attempted second-degree murder requires that a defendant act both purposely and maliciously. Wyo. Stat. Ann. §§ 6-2-104 and 6-1-301(a)(i). Mr. Guy contends that there is insufficient evidence to establish purpose and malice largely because no person testified to witnessing the stabbing. We disagree. "Malice may be inferred from the use of a deadly weapon in a danger-

ous and deadly manner if the facts and circumstances so allow. Malice may also be inferred from all the other facts and circumstances." *Doe v. State*, 569 P.2d 1276, 1279 (Wyo.1977) (citation omitted). There was no dispute that Mr. Riske was stabbed. The inference that Mr. Guy stabbed Mr. Riske is supported by Mr. Riske's testimony that, when he felt a blow, Mr. Guy was the only person standing close enough to have delivered it. The fact of the stabbing, together with testimony from Mr. Riske and other witnesses regarding Mr. Guy's confrontational behavior, makes it reasonable to infer that Mr. Guy stabbed Mr. Riske and did so purposely and with malice. We conclude that the State presented sufficient evidence to allow a reasonable jury to convict Mr. Guy of attempted second-degree murder.

**Excessive Security**

[¶ 39] Mr. Guy asserts that his conviction should be reversed because the district court allowed an excessive display of security in the jury's presence. After the jury had retired on the first day of trial, the following exchange took place:

> [Defense counsel]: . . . . I don't like to complain about things, and I don't like to—but I would ask the Court to admonish the detention center staff. Part of their purpose here is to be as unobtrusive as possible. I recognize that they have to take care of security, but, Your Honor, I have been in courtrooms across this State with some of the most dangerous and violent defendants that [have] come through the state in the past five years.
>
> The detention center staff is following Mr. Guy around when he has to go view an exhibit and perhaps what I'm most struggling with is, before lunch while the jury was still there in a voice loud enough to be heard by them, statements like, "Okay. You got to come with us now during lunch." And I would ask the Court to admonish the detention center staff that it is very important for them to remain unobtrusive, especially when the jury is present.
>
> THE COURT: It is also important, Counsel, for them to remain in a position to enable them to do their job. If your client wants to get up and go over across the courtroom and stand by the door, he's free to do that. I will let him do that. But one of them is going to go with him, because they are not going to be of any use to me or anybody else in this courtroom when they are over here on the other side of the courtroom and your client decides to do something. So your client can either sit in his chair and stay there; if he wants to wander around, he is going to wander around with some accompaniment. Okay?
>
> [Defense counsel]: If we could just have somebody on both sides, we could easily solve that. But it's just like a guy coming in the courtroom in shackles and a jail uniform.
>
> THE COURT: No, it is not. No, it's not. It is fundamentally different. And they will follow him around the courtroom if he chooses to move around. If he doesn't want to be followed around, then he can stay in his chair. That's pretty simple, okay?
>
> [Defense counsel]: Yes, sir.

[¶ 40] Mr. Guy asserts that the security arrangements at his trial violated the procedure that we established in *Asch v. State*, 2003 WY 18, ¶ 62, 62 P.3d 945, 964 (Wyo.2003). We disagree. In *Asch*, we stated:

> [D]efendants shall not be shackled or otherwise physically restrained in the courtroom during a jury trial, nor shall other exceptional security measures be utilized, unless the State has first moved that such measures be utilized, the court has heard such motion, and after allowing the defendant an opportunity to contest the motion, the court has stated on the record the compelling reasons justifying the measures.

*Id.* Mr. Guy was not shackled or otherwise physically restrained. The presence of security personnel differs from shackling and is not inherently prejudicial to a defendant. *See Holbrook v. Flynn*, 475 U.S. 560, 569, 106 S.Ct. 1340, 1346, 89 L.Ed.2d 525 (1986). The State has a legitimate interest in maintaining custody during trial. *Id.* at 571–72, 106 S.Ct. at 1347. Mr. Guy has failed to establish that

the security measures utilized were exceptional or that he was prejudiced by the precautions approved by the district court.

## Constitutionality of Attempted Second-Degree Murder

[¶41] Mr. Guy next mounts an as applied constitutional challenge to the crime of attempted second-degree murder, as defined by the general attempt statute and the second-degree murder statute. Wyo. Stat. Ann. §§ 6–1–301(a)(i), 6–2–104. He acknowledges, however, that we generally do not consider issues for the first time on appeal unless they involve jurisdiction or "a right so fundamental in nature that the court must take cognizance of it." *Jones v. State*, 2006 WY 40, ¶ 7, 132 P.3d 162, 164 (Wyo.2006). Mr. Guy claims that a statute's constitutionality is, in fact, jurisdictional, and that we should address the merits of his constitutional challenge. For support, he relies on *Rutti v. State*, 2004 WY 133, ¶ 10, 100 P.3d 394, 400–01 (Wyo.2004). We decline to give that decision the broad reading urged by Mr. Guy. Instead, we consider Mr. Guy's as applied constitutional claim to be waived.

[¶42] In *Rutti*, we addressed constitutional challenges in an appeal from a defendant's conviction following a guilty plea. In the unique context of a guilty plea, we have allowed defendants, though admitting all the elements of the crime charged, to contend for the first time on appeal that the statute violated by the defendant is unconstitutional. *Armijo v. State*, 678 P.2d 864, 867 (Wyo. 1984); *Rutti*, ¶ 10, 100 P.3d at 400–01. We explained that "[l]ittle purpose would be served by requiring a defendant to insist upon a trial in order to preserve his opportunity to challenge the constitutionality of the statute, and we do not insist upon that." *Armijo*, 678 P.2d at 867.

[¶43] Despite the exception to the waiver rule articulated in *Rutti* and Armijo, an allegation that a statute is unconstitutional is not a jurisdictional defense and may be waived. *Jones*, ¶ 8, 132 P.3d at 164–65. In *Jones*, the defendant was found guilty by a jury of escape pursuant to Wyo. Stat. Ann. § 7–18–112(a)(i). ¶ 1, 132 P.3d at 163. On appeal, she brought both an as applied and

facial constitutional challenge to the escape statute. *Id.*, ¶ 2, 132 P.3d at 163. She did not raise these arguments in the district court. *Id.*, ¶ 7, 132 P.3d at 164. Instead, she contended on appeal that the escape statute's constitutionality presented a jurisdictional issue and, therefore, an exception to the waiver doctrine applied. *Id.* We disagreed, stating the following:

> The [constitutional] issue does not raise jurisdictional concerns. There is a strong presumption in favor of the constitutionality of a statute. *Giles v. State*, 2004 WY 101, ¶ 10, 96 P.3d 1027, 1030 (Wyo.2004). A trial court unquestionably has subject-matter jurisdiction over a controversy stemming from a violation of a state law that is presumptively valid.

*Id.*, ¶ 8, 132 P.3d at 164–65. We concluded that Ms. Jones had waived her constitutional challenge in the district court and we declined to address it on appeal. *Id.*, ¶ 8, 132 P.3d at 165. We reach the same result here. Mr. Guy did not enter a guilty plea and, accordingly, the exception we applied in *Armijo* and *Rutti* is inappropriate. We decline to address Mr. Guy's constitutional challenge on appeal.

## Remaining Claims of Error

[¶ 44] Mr. Guy also asserts that several other incidents of misconduct occurred during the prosecutor's closing argument and throughout his trial. In particular, he claims that the prosecutor improperly shifted the burden of proof, improperly cross-examined two defense witnesses, and improperly argued from the victim's perspective in closing arguments. He also presents two additional claims of ineffective assistance of trial counsel: that his counsel failed to adequately raise a medical defense, and that trial counsel failed to object to what Mr. Guy asserts were numerous incidents of prosecutorial misconduct. We will not recount each of the incidents because, again, Mr. Guy has failed to establish prejudice. He merely contends that these incidents, apart or together, "deprived [him] of his right to a fair trial on its own merits." We have addressed Mr. Guy's claims where he has presented relevant authority or cogent argument. His remaining claims, however, are so inadequately present-

ed that they do not allow meaningful review. Consequently, we decline to address these issues. W.R.A.P. 7.01(f); *Schultz v. State,* 2007 WY 162, ¶ 18, 169 P.3d 81, 87 (Wyo. 2007); *Rion v. State,* 2007 WY 197, ¶ 2, 172 P.3d 734, 736 (Wyo.2007).

**Cumulative Error**

[¶ 45] Lastly, Mr. Guy claims that all the incidents he asserts as error, when considered together, amount to cumulative error. He states that "[o]ne cannot be confident of the verdict in view of the nature and number of errors." The purpose of evaluating for cumulative error is "to address whether the cumulative effect of two or more individually harmless errors has the potential to prejudice the defendant to the same extent as a single reversible error." *McClelland v. State,* 2007 WY 57, ¶ 27, 155 P.3d 1013, 1022 (Wyo.2007). In conducting a cumulative error evaluation, we consider only matters that we have determined to be errors. *Id.* We will reverse a conviction only when " 'the accumulated effect [of the errors] constitutes prejudice and the conduct of the trial is other than fair and impartial.' " *Id.* (quoting *Alcala v. State,* 487 P.2d 448, 462 (Wyo.1971)). Based upon that standard, our detailed review of the record, and our analysis of the legal issues presented by Mr. Guy, we do not find any merit in his claim of cumulative error.

[¶ 46] Affirmed.